(No. 79312.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DREW TERRELL, Appellant.

*Opinion filed December 31, 1998.—Rehearing denied March 29, 1999.*

470

474

476

478

FREEMAN, C.J., joined by McMORROW, J., specially concurring.
HARRISON, J., dissenting.

Rita A. Fry, Public Defender, of Chicago (Jeffrey M. Howard and Lester Finkle, Assistant Public Defenders, of counsel), and Eric Moch, law student, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (Arleen C. Anderson and William L. Browers, Assistant Attorneys General, of Chicago, and Renee Goldfarb, Linda Woloshin and Nancy Faulls, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant, Drew Terrell, was convicted in the circuit court of Cook County of the murder and aggravated criminal sexual assault of 15-month-old Laura Hampton. Defendant was sentenced to death for the murder conviction and to a 60-year prison term for the aggravated criminal sexual assault conviction. On appeal, this court affirmed defendant's convictions but vacated his sentences and remanded to the circuit court for a new sentencing hearing. *People v. Terrell*, 132 Ill. 2d 178 (1989). The specific facts pertaining to defendant's conviction are set forth in detail in our prior opinion. Therefore, only the facts necessary for understanding and adjudicating the issues in the present appeal will be repeated.

At the resentencing hearing, a jury found defendant eligible for the death penalty based on two statutory aggravating factors: (1) the defendant had been found

guilty of murdering a victim under 12 years of age and the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(7)); and (2) the defendant murdered the victim in the course of another felony, that of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)). The jury found no mitigating circumstances sufficient to preclude imposition of the death penalty and the circuit court sentenced defendant to death. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(g). Defendant's death sentence was stayed pending direct appeal to this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d Rs. 603, 609(a).

## ISSUES

In this direct appeal, defendant raises 24 separate issues as grounds for vacating his death sentence. These contentions essentially raise claims of error occurring in the: (1) jury selection; (2) eligibility stage of sentencing; (3) aggravation/mitigation stage of sentencing; and (4) sentencing. Defendant additionally raises 10 separate challenges to (5) the constitutionality of the Illinois death penalty statute.

## DISCUSSION

### 1. Jury Selection

Defendant contends three errors occurred during the jury selection process which deprived him of the right to be sentenced by an impartial jury (U.S. Const., amends. VI, XIV). First, defendant maintains that the trial court erred when it refused to ask potential jurors whether the age of the victim would make a difference in their ability to be fair. Defendant argues that the trial court's conduct violated the mandates of *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), because it prevented him from being able to ascertain whether potential jurors would consider all the mitigating evi-

dence. Defendant further argues that his case is analogous to cases in which it was held to be error to refuse *voir dire* questions regarding racial bias (see *Turner v. Murray*, 476 U.S. 28, 90 L. Ed. 2d 27, 106 S. Ct. 1683 (1986)) and prejudice against criminal street gangs (see *People v. Jimenez*, 284 Ill. App. 3d 908 (1996)).

The purpose of *voir dire* is to assure the selection of an impartial panel of jurors who are free from bias or prejudice. *People v. Williams*, 164 Ill. 2d 1, 16 (1994). The primary responsibility of conducting the *voir dire* examination lies with the trial court and the manner and scope of such examination rests within that court's discretion. *Williams*, 164 Ill. 2d at 16; 134 Ill. 2d Rs. 234, 431. Indeed, the trial court possesses great latitude in deciding what questions to ask during *voir dire*. *Mu'Min v. Virginia*, 500 U.S. 415, 424, 114 L. Ed. 2d 493, 505, 111 S. Ct. 1899, 1904 (1991). On review, an abuse of the court's discretion will be found only when the record reveals that the court's conduct "thwarted the selection of an impartial jury." *Williams*, 164 Ill. 2d at 16.

Initially, we observe that this court recently rejected an argument similar to the one advanced by defendant here. In *People v. Brown*, 172 Ill. 2d 1 (1996), the trial court disallowed the defendant's supplemental *voir dire* question which would have asked potential jurors whether they would consider not imposing the death penalty if the defendant was convicted of killing two young children and their mother. On review, this court found no error in the trial court's refusing to ask the proposed *voir dire* question. *Brown*, 172 Ill. 2d at 29-31. This court observed that the mandates of *Morgan* do not require questioning potential jurors about how they would act given the particular aggravating circumstances of the victim's murder. *Brown*, 172 Ill. 2d at 31.

Similarly, in the instant case, we find that the trial court did not abuse its discretion in refusing to ask

defendant's proposed *voir dire* question. In its initial statements, the trial court informed the venire that the victim involved was a child. The trial court also educated the venire that the purpose of the *voir dire* examination was to select fair and impartial jurors who would decide the matter based solely on the evidence and the law. In addition, during the individual examination, the trial court asked each venireperson whether he or she would automatically vote to impose death without consideration of the mitigating evidence. A thorough review of this record reveals that the trial court did nothing to frustrate the selection of an impartial jury.

The other cases defendant relies upon are inapposite. In *Turner*, the United States Supreme Court held that a capital defendant accused of an interracial crime is entitled to have prospective jurors questioned on the issue of racial bias. *Turner*, 476 U.S. at 36-37, 90 L. Ed. 2d at 37, 106 S. Ct. at 1688. The instant case does not involve an interracial crime. In *Jimenez*, the defendant was convicted of murdering a man who opposed defendant's gang activities. *Jimenez*, 284 Ill. App. 3d at 910-11. On review, the appellate court recognized a widespread prejudice against street gangs. In reversing defendant's conviction, the appellate court determined that, under those individual circumstances, fundamental fairness required the trial court to question potential jurors regarding their bias towards gang members. *Jimenez*, 284 Ill. App. 3d at 912-13. We find that the circumstances and fairness concerns involved in *Turner* and *Jimenez* are not present in defendant's case. To be constitutionally compelled, it is not enough that a *voir dire* question be helpful, rather, the trial court's failure to ask the question must render the defendant's proceedings fundamentally unfair. *Mu'Min*, 500 U.S. at 425-26, 114 L. Ed. 2d at 506, 111 S. Ct. at 1905. We find that defendant's proceedings were not rendered fundamen-

tally unfair by the trial court's failure to ask defendant's proposed *voir dire* question.

Defendant next contends that certain comments the trial court made to potential jurors during *voir dire* denigrated the mandates of *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968), and *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992). In *Witherspoon*, the Supreme Court set forth guidelines under which the court may exclude for cause prospective jurors because of their views on the death penalty. *Witherspoon*, 391 U.S. at 520-22, 20 L. Ed. 2d at 784-85, 88 S. Ct. at 1776-77; *People v. Cole*, 172 Ill. 2d 85, 99 (1996). Subsequently, in *Morgan*, the Supreme Court held that a defendant is entitled to have potential jurors questioned as to whether they would automatically vote to impose the death penalty upon a finding of guilt, without regard to the aggravating or mitigating circumstances present in the case. *Morgan*, 504 U.S. at 734-39, 119 L. Ed. 2d at 506-09, 112 S. Ct. at 2232-35; *People v. Hope*, 168 Ill. 2d 1, 29 (1995).

Defendant cites instances during the examination of seven venirepersons when the trial court commented on *voir dire* questions, characterizing the questions as silly, unnecessary, or repetitious. Defendant describes the trial court's comments as flippant and disparaging and argues that, through these comments, the trial judge expressed his personal opinion to the jury. The result, defendant argues, is that the jury empaneled for his sentencing proceeding was not impartial.

In order to satisfy the mandates of *Witherspoon* and *Morgan*, the trial court here asked each potential juror these two questions:

"Would you automatically vote against the death penalty no matter what the facts of the case would be?" "Would you automatically vote for the death penalty no matter what the facts would be?"

A review of the record reveals that the two *voir dire* ques-

tions were typically asked by the trial court consecutively. In addition, the two questions were preceded by general questions as to whether the potential juror possessed any scruples or religious concerns against the imposition of the death penalty.

"THE COURT: It seems like a silly question. Would you automatically vote for the death penalty no matter what the facts would be?

\* \* \*

THE COURT: Would you automatically vote—it's rather repetitious, but you'll bear with me. Would you automatically vote against the death penalty no matter what the facts would be?

\* \* \*

THE COURT: Okay. So the next question is kind of— you wouldn't think it's necessary because you have answered the first one. Would you automatically vote against the death penalty in all cases?"

We agree with defendant that the trial court should not have made such comments during the examination of potential jurors. As this court has previously observed, trial judges maintain great influence upon jurors. The judge's slightest word is received with deference and may prove controlling. Accordingly, a trial judge should exercise restraint over his or her utterances and refrain from unnecessary disparagement of issues. See *People v. Peeples*, 155 Ill. 2d 422, 466-67 (1993), citing 1 Standards for Criminal Justice § 6—3.4 (2d ed. 1980).

While we agree with defendant that the venirepersons should not have heard the trial court's comments regarding the *voir dire* questions, we nevertheless cannot say that the remarks prejudiced defendant. This court has previously reviewed cases where the venire heard remarks which were more likely to affect a jury's impartiality than the remarks in the present case. See *Peeples*, 155 Ill. 2d at 464-68 (trial judge's disparaging

comment that rules of evidence prevent jury from hearing all of the State's evidence); *People v. Erickson*, 117 Ill. 2d 271, 292-93 (1987) (venireperson quoting prosecutor that only a " 'locked solid case' " goes to trial); *People v. Del Vecchio*, 105 Ill. 2d 414, 428-29 (1985) (venireperson's comment that defendant should not be walking the streets). In those instances, this court did not consider the trial court's comments to be so prejudicial as to preclude the juries from reaching verdicts based solely on the evidence presented to them.

Similarly, in the instant case, the trial court's comments were not so prejudicial as to damage the impartiality of defendant's jury. The trial court advised the potential jurors that the persons selected to serve on the jury would be relied upon to decide the issues based solely on the evidence and the law. Moreover, in its written instructions, the trial court admonished the jury that it did not intend, by any ruling or remark, to indicate an opinion as to the evidence or what the verdict should be. We find that these jury instructions rendered this particular error harmless. See *Peeples*, 155 Ill. 2d at 467-68.

Defendant's final contention regarding jury selection is that the trial court erred in excusing for cause one venireperson, David Rose. Defendant argues that Rose was excused because of his opposition to the death penalty in violation of *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844 (1985). In *Wainwright*, the United States Supreme Court clarified that a potential juror may be excluded for his views on capital punishment only when those views prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath. *Wainwright*, 469 U.S. at 424, 83 L. Ed. 2d at 851-52, 105 S. Ct. at 852. Because the *Wainwright* standard is inapplicable to the instant situation, we reject defendant's contention. The record clearly indicates that venireperson Rose was not excluded

because of his views on capital punishment but, rather, was excluded because of his predisposition towards police testimony.

During the trial court's initial examination, Rose generally stated that he could be fair and impartial. Thereafter, the trial court indicated that police officers would be testifying and specifically asked Rose whether he was predisposed towards believing a police officer's testimony. In response, Rose stated: "Well, other than the fact that they're professionals and do this job for a living, I think I'd have a little more belief because of that." At the end of the trial court's examination, the State moved to excuse Rose for cause. Rather than ruling on the State's motion, the trial court, *sua sponte*, excused Rose for cause. The trial court repeatedly indicated that it was doing so because of Rose's predisposition towards police testimony.

The trial court is granted wide discretion in determining whether to exclude a potential juror for cause based upon that person's *voir dire*. *Hope*, 168 Ill. 2d at 31. Upon review, the entire *voir dire* of the potential juror must be considered, rather than selected statements. *Peeples*, 155 Ill. 2d at 462-63. Moreover, the trial court's ruling is entitled to substantial deference because it is in the best position to interpret the meaning of the potential juror's remarks. *Hope*, 168 Ill. 2d at 31. In the instant case, the testimony of several police officers was offered during defendant's sentencing hearing. Rose expressed doubt as to his ability to be impartial regarding police testimony and, thus, was "not prepared to stand indifferent, and to be guided only by law and the evidence." *Peeples*, 155 Ill. 2d at 463. Accordingly, we hold that the trial court did not abuse its discretion in excluding Rose from the jury.

### Stage 2. Eligibility

Defendant next raises several issues regarding the eligibility stage of his capital sentencing hearing. First,

defendant contends he was denied a fair sentencing hearing because the State, in order to prove defendant's eligibility for the death sentence, presented "more evidence than was proper" in order to "relitigate" the issue of defendant's guilt. Specifically, defendant challenges the trial court's admission into evidence: (1) the 26-count indictment returned against defendant; (2) a certified copy of conviction showing defendant had been found guilty of all 26 counts; (3) Marketta Hampton's observations of Laura in the hospital and her identification of various objects in her apartment; (4) testimony regarding defendant's initial noninculpatory statement; and (5) police testimony regarding the sequences of the criminal investigation. Defendant believes that this evidence had no relevance to his eligibility for the death penalty and that its inflammatory nature improperly influenced the jury.

The purpose of the first stage of a capital sentencing hearing is to allow the jury to determine a defendant's eligibility for the death penalty free from any potentially inflammatory evidence that could improperly influence this decision. *People v. Edgeston*, 157 Ill. 2d 201, 224 (1993). Following this principle, only evidence having a direct bearing on the statutory prerequisites should be admitted during the eligibility stage. *People v. Hooper*, 172 Ill. 2d 64, 73 (1996). However, the determination of whether to admit evidence at the first stage of a capital sentencing hearing is for the trial court, and its decision will not be disturbed absent an abuse of discretion. *Edgeston*, 157 Ill. 2d at 224.

In the instant case, the State relied upon two separate statutory aggravating factors as its basis for invoking the death penalty. First, the State sought to prove that defendant had been found guilty of murdering a victim under 12 years of age and the death resulted from exceptionally brutal or heinous behavior indicative of

wanton cruelty. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(7). In addition, the State sought to prove that defendant murdered the victim in the course of the felony of aggravated criminal sexual assault. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(c). In order to find defendant eligible for the death penalty pursuant to this felony-murder factor, the sentencing jury had to determine that the victim was killed by defendant or was physically injured by defendant substantially contemporaneously with the injuries that caused her death. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(a). Moreover, the sentencing jury had to determine that defendant killed the victim intentionally or with the knowledge that the acts which caused the death created a strong probability of death or great bodily harm. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b). The State had the burden of establishing the existence of all the elements of both statutory aggravating factors beyond a reasonable doubt. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(f).

Despite defendant's assertion otherwise, we find that the trial court did not abuse its discretion in admitting the specified evidence. Initially, we observe that, as to most of the allegedly improper evidence, defendant failed to either object during the sentencing hearing or raise the issue in his post-sentencing motion. Therefore, unless deemed to be plain error, defendant has waived his challenge to most of the specified evidence. *People v. Williams*, 181 Ill. 2d 297, 322 (1998). Nevertheless, because defendant raises general allegations of plain error (134 Ill. 2d R. 615(a)), we address his particular evidentiary challenges.

Defendant disputes the admissibility of police testimony regarding the investigation leading to his arrest. A police detective testified about interviewing defendant's mother, Elizabeth Terrell, who stated that she left Laura Hampton alone with defendant while she went to a cur-

rency exchange to pick up a public aid check. When Elizabeth returned to the apartment, she found Laura had been injured so she took her to the hospital, accompanied by defendant. The detective also testified about verifying Elizabeth's story with the manager of the currency exchange.

Defendant now asserts that testimony regarding his mother's "alibi" was both irrelevant and inadmissible under the hearsay rule. However, because the sentencing jury here was not the same jury that heard the evidence presented at defendant's trial, it was within the trial court's discretion to allow general testimony describing the circumstances of the crimes. Moreover, Elizabeth's statements to police established the duration of time defendant had to commit the crimes, contemplate a cover story, and then take actions to effectuate that story. All of these details are probative of defendant's mental state at the time of the acts. Although police testimony of Elizabeth's interview might have been hearsay, defendant did not object to this testimony or oppose it in his post-sentencing motion and, therefore, his hearsay challenge is waived. *Williams*, 181 Ill. 2d at 322. In addition, any error in admitting this testimony does not rise to the level of plain error. Overwhelming evidence was presented establishing defendant's eligibility for the death penalty under two aggravating factors. Evidence of Elizabeth's actions prior to the crime only established how defendant came to be alone with the victim, a fact which defendant corroborated himself in his confession. Accordingly, any error in admitting the police detective's hearsay testimony was harmless.

The State also presented police testimony that during the early stages of the investigation, defendant gave a noninculpatory statement. Initially, defendant told police that he was in the bathroom when he heard a loud crash in the bedroom. When defendant investigated, he

found Laura injured on the floor with stereo components lying on her head and legs. Defendant told the police that he was in the process of washing Laura's wounds when his mother arrived home and took Laura to the hospital. Defendant now contends that evidence of his initial noninculpatory statement is not relevant to any of the statutory prerequisites of eligibility for the death penalty. However, evidence that defendant lied to the police and attempted to cover up the real source of Laura's injuries was relevant to establish his state of mind at the time of the murder. See *Edgeston*, 157 Ill. 2d at 226; *People v. Rogers*, 123 Ill. 2d 487, 516-17 (1988). Accordingly, the trial court did not err in allowing testimony regarding defendant's initial statement.

Another police detective testified that, during the initial stages of his investigation, he spoke with a doctor who told him Laura's injuries could not have been caused by a radio falling upon her. Defendant argues that the police detective's testimony was not relevant to any matter at issue during the eligibility stage. However, establishing the actual cause of Laura's injuries was clearly required in order to prove that defendant's behavior was brutal or heinous. Moreover, we have already determined that evidence of defendant's attempts to cover up the incident was probative of his state of mind. Accordingly, this testimony was properly admitted.

Regarding Marketta Hampton's testimony, defendant argues that her testimony was irrelevant and designed to evoke sympathy from the jury. Marketta testified about observing Laura's injuries at the hospital. Her testimony established that Laura had not sustained any injuries prior to being left in defendant's care that day. Evidence of a victim's injuries are relevant to show the deliberate nature of the defendant's actions in killing that person. *Hope*, 168 Ill. 2d at 42. Thus, the trial court properly admitted such testimony. In her direct testimony, Mar-

ketta also identified various objects that were found in her apartment, including a hair brush, tooth brush, and metal rod. The State subsequently argued that these objects may have been used to sexually assault Laura and may have caused the internal injuries which contributed to her death. Evidence of the weapon used during the crimes is clearly relevant to establish a defendant's intent at the time of the incidents. *Rogers*, 123 Ill. 2d at 516-17. Moreover, the use of such an object in the present case would clearly be probative of whether defendant's behavior was exceptionally brutal or heinous. Accordingly, the trial court did not err in allowing Marketta Hampton's testimony.

Defendant also takes issue with the trial court's admission into evidence of the indictment returned against him and the certified copy of convictions showing that he had been found guilty of all 26 counts of the indictment. Defendant argues that the underlying indictment in this case was not relevant to any eligibility factor. In addition, defendant argues that the certified copy of convictions was inadmissible because certain convictions were for felonies not included in the felony-murder aggravating factor. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(c). Initially, we observe that defendant has waived his challenge to the admissibility of the certified copy of convictions. Not only did defendant fail to contemporaneously object to its admission, defendant specifically stated that he had no objections to the certified copy of convictions. In addition, we do not believe that any error in admitting the certified copy of convictions would be plain error. In order to sustain its burden in showing defendant's eligibility under the felony-murder aggravating factor, the State had to show that defendant had been found guilty of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)) and that the victim was killed during the course of one of the statutory listed felonies

(Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(c)). The certified copy of defendant's convictions was relevant to establish these prerequisites. Because the State presented overwhelming evidence to establish defendant's death eligibility under both statutory aggravating factors, we find that any error caused by the admission of the indictment or the evidence of defendant's other felony convictions was harmless.

Defendant next argues that the trial court abused its discretion when it allowed the jury to view several photographs taken during Laura Hampton's autopsy. Specifically, defendant argues that the photographs that depict examination of the victim's internal injuries are disgusting and any probative value they had was outweighed by their potentially prejudicial effect. Whether or not a jury is allowed to view photographs depicting a victim's injuries rests within the sound discretion of the trial court, and such decision will not be reversed unless it represents an abuse of discretion. *People v. Harris*, 182 Ill. 2d 114, 151 (1998); *People v. Henderson*, 142 Ill. 2d 258, 319 (1990). If photographs are relevant to prove any fact at issue, they are admissible and can be shown to the jury unless their nature is so prejudicial and so likely to inflame the jurors' passions that their probative value is outweighed. *Henderson*, 142 Ill. 2d at 319. However, if a photograph has sufficient probative value, it may be admitted in spite of its gruesome or disgusting nature. *People v. Scott*, 148 Ill. 2d 479, 546 (1992); *People v. Lucas*, 132 Ill. 2d 399, 439 (1989). Photos of a deceased victim may be utilized to prove the nature and extent of the injuries, the force necessary to inflict the injuries, the position, location, and condition of the body, and the manner and cause of death; to corroborate a defendant's confession; and to aid in understanding the testimony of a pathologist or other witness. *People v. Kidd*, 175 Ill. 2d 1, 37-38 (1996); *Henderson*, 142 Ill. 2d at 319-20.

During the eligibility stage of the instant defendant's sentencing proceeding, the State was required to prove, among other things, that Laura Hampton's death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(7)), that defendant acted with intent to kill the victim or with the knowledge that his acts created a strong probability of her death or great bodily harm (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(b)), and that the killing occurred in the course of an aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)(c)). The photographs were relevant to show the location, nature, and extent of the victim's wounds and also the great amount of force necessary to inflict such injuries. Moreover, the photographs were relevant in that they assisted the jurors in determining whether the physical evidence was consistent with defendant's confession. Finally, the photographs would have assisted the jurors in understanding the medical examiner's testimony. All of these facts were probative in showing that defendant's conduct satisfied the elements of the statutory aggravating factors. Accordingly, the trial court did not abuse its discretion in allowing the jury to view the autopsy photographs.

Next, defendant contends that the trial court abused its discretion in permitting police detective Jim Clemons to testify that he had never before seen injuries like those suffered by the victim. Defendant argues that the trial court erroneously determined that Clemons was an expert witness and, therefore, Clemons improperly testified to his opinion of an ultimate issue of fact: the exceptionally brutal or heinous behavior of the crime. Initially, we note that it is now well settled that a witness, whether expert or lay, may provide an opinion on the ultimate issue in a case. *Richardson v. Chapman*, 175 Ill. 2d 98, 107 (1997) (and cases cited therein). This

is so because the trier of fact is not required to accept the witness' conclusion and, therefore, such testimony cannot be said to usurp the province of the jury. *Richardson*, 175 Ill. 2d at 107-08; *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 545 (1995).

Further, we find it unnecessary to determine whether Clemons was properly qualified as an expert witness because Clemons' testimony was an appropriate lay opinion. To be admissible, a lay opinion must be based upon the witness' personal observation and recollection of concrete facts; and such facts cannot be described in sufficient detail to adequately convey to the jury the substance of the testimony. See *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton*, 108 Ill. 2d 217, 221-22 (1985). Here, Clemons testified that he had been a violent crimes detective for five years and had previously investigated cases involving the sexual assault of children. Clemons testified that he was present at the hospital and personally observed the injuries to Laura Hampton's vagina and anus. In response to the prosecutor's question, Clemons stated that he had never before seen injuries like those suffered by Hampton. Clemons' testimony was based on his personal observations and was helpful to the jury to clearly understand the extent of Hampton's injuries and the amount of force required to inflict them. Therefore, the admission of Clemons' testimony was not error.

Defendant next asserts that he was denied a fair sentencing hearing because the trial court impermissibly limited his cross-examination of two of the State witnesses: the victim's mother, Marketta Hampton, and James Sullivan, a former assistant State's Attorney. On direct examination, Marketta Hampton testified to her living arrangements with defendant and his mother. She testified to the events of the day of the murder and her observation of Laura in the hospital. Marketta also gave

limited testimony regarding the layout of the apartment, identifying rooms and certain objects depicted in photographs taken inside the apartment. During cross-examination, the trial court sustained the State's objection on relevancy grounds to a question regarding the use of the apartment's rear entrance. James Sullivan testified for the State that he interviewed defendant the day of the murder and witnessed defendant give a court-reported inculpatory statement. On cross-examination, the trial court precluded defendant's questions regarding the specific circumstances of defendant's giving the statement.

Defendant now argues that the trial court erred in denying him the opportunity to confront the witnesses and, consequently, he is entitled to a new sentencing hearing. Generally, cross-examination is limited in scope to the subject matter of direct examination of the witness and to matters affecting the credibility of the witness. See *People v. Jackson*, 182 Ill. 2d 30, 78 (1998); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 611.11, at 418 (5th ed. 1990). However, this limitation is construed liberally to allow inquiry into whatever subject tends to explain, discredit, or destroy the witness' direct testimony. See *People v. Gacho*, 122 Ill. 2d 221, 247 (1988). Nevertheless, the trial court's determination that an area of inquiry falls outside the proper scope of cross-examination should not be disturbed unless it is a clear abuse of discretion which results in manifest prejudice to the defendant. *Jackson*, 182 Ill. 2d at 79. With these principles in mind, we determine that the trial court did not abuse its discretion in limiting the scope of cross-examination of these two witnesses.

Marketta's testimony on direct examination regarding the apartment established a general understanding of the layout of the crime scene and the location of certain foreign objects possibly used to sexually assault

the victim. The trial court determined that defendant's questions regarding the frequency of use of the apartment's back entrance was not relevant to any eligibility factor. We cannot say that the trial court's determination was a clear abuse of discretion.

James Sullivan testified on direct examination that he witnessed defendant make an inculpatory statement. During cross-examination, the trial court sustained the State's objections to defendant's questions regarding whether defendant had been in contact with his family prior to making the statement. We cannot say that the trial court erred in determining that such questions were beyond the scope of direct examination. During the direct appeal of defendant's conviction, this court reviewed the circumstances of defendant's inculpatory statement, including his claims that he was not allowed to see his family members. After reviewing the totality of the circumstances, including defendant's admission at the suppression hearing that he had not asked to see his family, this court determined that defendant's statement was voluntary. See *Terrell*, 132 Ill. 2d at 199-201. During the eligibility stage of defendant's remand sentencing hearing, the relevant issues were whether defendant's conduct satisfied the elements of the statutory aggravating factors. The specific circumstances of defendant's voluntary statement were not probative of any relevant issue. Accordingly, the trial court did not abuse its discretion in limiting cross-examination on such details.

Defendant also contends that he was denied a fair sentencing hearing because the trial court prevented him from arguing during his opening statement at the eligibility stage that a reasonable doubt existed as to his guilt. In addition, defendant argues that the trial court erred by preventing him from presenting evidence that someone other than he had committed the murder; defendant aimed to argue that his mother also had the opportunity

to commit the murder. Nevertheless, a trial court should exclude a defendant's evidence that someone else committed the crime with which he is charged when the evidence is too remote or too speculative. *People v. Morgan*, 142 Ill. 2d 410, 466 (1991), *rev'd on other grounds*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992). Defendant has never before offered the theory that his mother committed these crimes. Rather, defendant admitted that it was his actions which caused Laura's injuries. In addition, on direct appeal, defendant did not contend that he did not injure Laura, rather he claimed that he did not act with the requisite intent. Therefore, we find the trial court properly found defendant's evidence too remote and speculative. Further, as we have already observed, only evidence having a direct impact on the statutory prerequisites for the death penalty should be admitted at the eligibility stage of a capital sentencing hearing. *Hooper*, 172 Ill. 2d at 73. Defendant's argument goes to the question of whether or not he actually committed the crimes, which is not probative of the relevant issue—whether any aggravating factors for the death sentence exist. Accordingly, the trial court did not abuse its discretion in precluding defendant's argument and evidence at the eligibility stage of sentencing. See *People v. McDonald*, 168 Ill. 2d 420, 453-54 (1995); *Morgan*, 142 Ill. 2d at 466-67.

In a related issue, defendant contends that the trial court's preclusion of such evidence violated his constitutional right to demonstrate that a "residual doubt" existed as to his guilt for these crimes. Nevertheless, this court has repeatedly rejected defendant's contention that a capital defendant has a right to present residual doubt evidence during either stage of the sentencing hearing. See *McDonald*, 168 Ill. 2d at 454-56; *Edgeston*, 157 Ill. 2d at 244-46; *Morgan*, 142 Ill. 2d at 467; *People v. Fields*, 135 Ill. 2d 18, 66-68 (1990); see also *Franklin v. Lynaugh*,

487 U.S. 164, 172-75, 101 L. Ed. 2d 155, 165-66, 108 S. Ct. 2320, 2327-28 (1988) (holding that capital defendant is not entitled to present residual doubt over guilt as mitigating evidence). In addition, we reject defendant's argument that, because his jury at resentencing was different from his jury at the guilt phase, he should be entitled to present residual doubt evidence. The *Franklin* Court contemplated procedural circumstances like defendant's, where a penalty-only proceeding is held on remand, and rejected the argument that such a defendant should be allowed to present residual doubt evidence to the new sentencing jury. *Franklin*, 487 U.S. at 173 n.6, 101 L. Ed. 2d at 165 n.6, 108 S. Ct. at 2327 n.6.

Defendant next contends that the State violated the principles of collateral estoppel when it presented and argued a different set of facts than that proved at defendant's trial. Defendant asserts that at his bench trial, the trial court found that defendant inserted his fingers and a Q-tip into Laura Hampton's vagina and anus. During defendant's present sentencing proceedings, the State offered evidence that defendant may have used a hairbrush, toothbrush, or metal rod to penetrate the victim. Defendant argues that the State was barred from relitigating the factual issues of the crimes which had already been determined by the guilt-phase trial court.

The doctrine of collateral estoppel bars relitigation of an issue of ultimate fact that has been determined by a valid and final judgment. See *People v. Williams*, 59 Ill. 2d 557, 560 (1975), quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, 1194 (1970). The primary purpose of the doctrine is to protect an accused from the unfairness of having to relitigate, in a second proceeding, an issue which has once been decided in his favor by a verdict of acquittal. *People v. Klingenberg*, 172 Ill. 2d 270, 281 (1996). Therefore, the

essence of defendant's argument is that his conviction of killing the victim with only his hand and a Q-tip is equivalent to a verdict of acquittal. Nevertheless, we refuse to consider defendant's contention because he has waived this issue.

At sentencing, the State presented evidence of the presence of a hairbrush, a toothbrush, and a metal rod in the location where the victim was assaulted. The State also offered the testimony of Dr. Nancy Jones, who opined that it was possible that Laura's injuries to her vagina and rectum could have been caused by the insertion of either adult fingers or a foreign object. Dr. Jones also testified that the patterned bruises on Laura's face could have been caused by being hit with the back of a hairbrush. Defendant failed to object to any of the evidence he now challenges. In addition, defendant did not object to any portion of the State's argument referring to this evidence. Further, defendant failed to raise his collateral estoppel issue in his post-sentencing motion. Because we find that the alleged error does not constitute plain error, the issue is waived. *Williams*, 181 Ill. 2d at 322; *People v. Mahaffey*, 166 Ill. 2d 1, 27 (1995).

Defendant next contends that section 9—1(b)(7) of the Criminal Code of 1961, under which he was found eligible for the death penalty, is unconstitutional. Section 9—1(b)(7) provides that a defendant who has been found guilty of murder may be sentenced to death if "the murdered individual was under 12 years of age and the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty." Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(7). Citing *Maynard v. Cartwright*, 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988), and *Godfrey v. Georgia*, 446 U.S. 420, 64 L. Ed. 2d 398, 100 S. Ct. 1759 (1980), defendant argues that the phrase "exceptionally brutal or heinous behavior indicative of wanton cruelty" fails to sufficiently guide or limit

the discretion of the sentencer and, consequently, is unconstitutionally vague under the eighth amendment (U.S. Const., amend. VIII).

Defendant acknowledges that this court has previously upheld section 9—1(b)(7) against similar vagueness challenges pursuant to both *Godfrey* and *Maynard*. See *Jackson*, 182 Ill. 2d at 62-64; *People v. Fair*, 159 Ill. 2d 51, 80-82 (1994); *Lucas*, 132 Ill. 2d at 443-46; *People v. Kidd*, 129 Ill. 2d 432, 454-56 (1989); *People v. Odle*, 128 Ill. 2d 111, 138-41 (1988). In *Odle*, this court first held that section 9—1(b)(7) is constitutional on its face. *Odle*, 128 Ill. 2d at 140. We will not reconsider the facial constitutionality of section 9—1(b)(7) here. Defendant does not challenge the application of section 9—1(b)(7) to his case, as he does not contend that any of the qualifying requirements of the statute were omitted. See *Jackson*, 182 Ill. 2d at 63-64; *Odle*, 128 Ill. 2d at 140-41. Therefore, we need not consider whether the application of section 9—1(b)(7) to this defendant was unconstitutional.

Defendant next contends that the jury improperly found him eligible for a death sentence based on the felony-murder aggravating factor because the verdict form omitted the required mental state for eligibility and failed to specify what other felony had been committed. Defendant cites *People v. Mack*, 167 Ill. 2d 525, 537-38 (1995), in support of his contention that he is entitled to a new sentencing hearing because of the insufficient verdict.

The State responds that the verdict was not defective because the jury was properly instructed on both the requisite intent and the underlying felony. However, we need not resolve the issue here because defendant's eligibility finding is not impaired.

In addition to the felony-murder aggravating factor, the jury found defendant eligible for the death penalty

under section 9—1(b)(7) (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(7) (victim under the age of 12 murdered and the death resulted from exceptionally brutal or heinous behavior indicative of wanton cruelty)). This court has repeatedly held that the Illinois death penalty statute does not place special emphasis on any aggravating factor and does not accord any added significance to multiple aggravating factors as opposed to a single factor. See *People v. Cloutier*, 178 Ill. 2d 141, 157 (1997); *People v. Brown*, 169 Ill. 2d 132, 164 (1996); *People v. Coleman*, 129 Ill. 2d 321, 345 (1989). Once the sentencer determines a single statutory aggravating factor is applicable, the defendant is eligible for the death penalty regardless of whether other aggravating factors have been proved as well. *Cloutier*, 178 Ill. 2d at 157. Accordingly, when a defendant is found eligible for the death penalty based upon two or more statutory aggravating factors, the fact that one of those factors may later be invalidated will not generally impair the eligibility finding as long as a separate, valid aggravating factor supported eligibility. *Cloutier*, 178 Ill. 2d at 157; *Cole*, 172 Ill. 2d at 102-03; *People v. Bounds*, 171 Ill. 2d 1, 69 (1995). In the present case, the jury's verdict on section 9—1(b)(7) independently established defendant's eligibility for the death penalty regardless of the validity of the verdict on the felony murder aggravating factor.

### 3. Aggravation/Mitigation Stage

#### a. *Evidentiary Issues*

Defendant raises several contentions that the trial court erred at the aggravation/mitigation stage of sentencing by allowing the jury to hear inadmissible evidence. Initially we observe that the Illinois death penalty statute allows the introduction of evidence during the sentencing hearing which would not ordinarily be admissible during the guilt phase of the trial. See Ill. Rev. Stat.

1985, ch. 38, par. 9—1(e). Moreover, the ordinary rules of evidence are relaxed at the aggravation/mitigation stage of sentencing. *Cloutier*, 178 Ill. 2d at 158. At this stage, the only requirements for admissibility are that the evidence be relevant and reliable. *People v. Hudson*, 157 Ill. 2d 401, 449 (1993). This is necessary because, in order to determine the appropriate sentence, the sentencing authority must possess the fullest information possible concerning the defendant's life, character, criminal record, and the circumstances of the particular offense. *Cloutier*, 178 Ill. 2d at 158. The determination of admissibility of evidence at the aggravation/mitigation stage of sentencing lies within the discretion of the trial court. *People v. Pulliam*, 176 Ill. 2d 261, 282 (1997). With these principles in mind, we review each of defendant's alleged evidentiary errors.

Defendant first asserts that the trial court allowed the State to introduce hearsay testimony from four witnesses who testified in aggravation. Defendant, in essence, contends that such testimony violates his constitutional right to confront witnesses against him (U.S. Const., amend. VI). However, defendant failed to specify any particular testimony he claims is hearsay. In addition, defendant failed to raise this contention in his post-sentencing motion. Therefore, the issue is waived. *Mahaffey*, 166 Ill. 2d at 27. Even if defendant had properly preserved this issue, we would find it meritless. It is a well-established rule that hearsay evidence may be admitted without cross-examination in death sentencing hearings so long as it is relevant and reliable. *People v. Thomas*, 178 Ill. 2d 215, 246 (1997); *People v. Holman*, 132 Ill. 2d 128, 155 (1989). Because defendant failed to indicate the testimony he challenges, we are unable to test its relevance and reliability. Furthermore, this court has held that hearsay testimony will not be deemed *per se* inadmissible at a sentencing hearing as denying a

defendant's right to confront witnesses. *Williams*, 181 Ill. 2d at 331; *People v. Hall*, 114 Ill. 2d 376, 416-17 (1986). Accordingly, we reject defendant's contention.

Defendant next contends that the trial court abused its discretion in allowing a records supervisor from the Department of Corrections to testify regarding various disciplinary infractions recorded in defendant's inmate file. Defendant argues that the trial court improperly relied on the business records exception to the hearsay rule to admit the testimony (see 725 ILCS 5/115—5 (West 1994)). Defendant also asserts that such testimony, gleaned solely from a defendant's prison records, should be deemed *per se* unreliable unless testified to by the correctional officer who actually witnessed the infraction and prepared the disciplinary report.

Initially we note that defendant's argument regarding the application of the business records exception is misplaced. During the aggravation/mitigation stage of sentencing, the ordinary rules of evidence are relaxed (*Cloutier*, 178 Ill. 2d at 158) and the introduction of certain evidence is allowed which would not ordinarily be admitted during the guilt phase of the trial (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(e)). Accordingly, like other evidence introduced at this stage, defendant's prison records are properly admissible if they are deemed to be relevant and reliable. *People v. Ward*, 154 Ill. 2d 272, 328-29 (1992).

We find defendant's contention that the prison records, which detailed his disciplinary problems while incarcerated, were inadmissible to be without merit. Evidence of a defendant's behavior in prison is clearly relevant to show his character and rehabilitative potential, which are valid considerations in determining whether the death sentence is proper in a particular case. See *People v. Coleman*, 158 Ill. 2d 319, 358 (1994); *Ward*, 154 Ill. 2d at 328-30; see also *Skipper v. South Carolina*, 476

U.S. 1, 4-5, 90 L. Ed. 2d 1, 6-7, 106 S. Ct. 1669, 1671 (1986). This court has also previously rejected the contention that testimony gleaned solely from a defendant's prison records should be deemed *per se* inadmissible because of the unreliable nature of these records. See, *e.g.*, *Fair*, 159 Ill. 2d at 89-90. In addition, we find defendant's particular prison records were reliable. The Department of Corrections official testified that the records were kept in the ordinary course of business and maintained during and after defendant's time of confinement in that penitentiary. In addition, it was during defendant's cross-examination of the witness that it was brought out that defendant admitted his involvement in all the incidents which resulted in disciplinary action. See *Hall*, 114 Ill. 2d at 417. Therefore, we conclude that defendant's contention is without merit.

Next, defendant contends that the opinion testimony of Dr. Demetrius Soter was improperly admitted because the witness went beyond the scope of her expertise when she testified that Laura Hampton's injuries were the worst she had ever encountered in the course of her medical practice. Defendant has waived this challenge to Dr. Soter's testimony. Although defendant did object to this testimony and challenge it in his post-sentencing motion, he did so on relevancy grounds. An objection to evidence on specified grounds waives on appeal any alternative objections not specified. *People v. Steidl*, 142 Ill. 2d 204, 230 (1991). Moreover, this alleged error does not warrant application of the limited exception to the waiver rule. Although defendant's evidence in mitigation was not insubstantial, the evidence at sentencing cannot be regarded as closely balanced. Further, the alleged error was not substantial and, thus, we decline to apply the exception to the waiver rule. See *Brown*, 172 Ill. 2d at 54-55; *People v. Rissley*, 165 Ill. 2d 364, 406-07 (1995).

Defendant next complains that he was denied the

right to present mitigating evidence when the trial court excluded testimony he offered to impeach an aggravation witness. Rigoberto Gaytan testified for the State regarding an incident where he was robbed by defendant. Gaytan stated that he had just boarded a public bus when a woman asked him for change. When Gaytan took out his wallet to give the woman a dollar, defendant left his bus seat and grabbed the wallet. At the same time, the woman attacked Gaytan, scratching him on the face. Gaytan was then pushed by defendant and pulled by a second man waiting outside the bus. As a result, Gaytan was thrown to the ground. All three offenders beat and kicked Gaytan as he lay on the ground. Subsequently, the three escaped with Gaytan's wallet.

During cross-examination, defense counsel identified the female attacker as defendant's mother. Gaytan denied defense counsel's assertion that it was defendant's mother who started the fight and pulled Gaytan off the bus. In an attempt to impeach Gaytan's testimony, defendant offered the testimony of Edward Chopski, a police officer who originally interviewed the driver of the bus about the incident. Because Chopski had since died, defendant offered the transcript of Chopski's testimony from defendant's original sentencing hearing in 1986. The trial court excluded the testimony, finding that it did not impeach Gaytan's testimony.

Defendant argues that the trial court erred in denying the transcript of Chopski's testimony. Defendant asserts that the testimony was relevant because it impeached Gaytan's assertion that defendant was the "primary aggressor" during the robbery and demonstrated the criminal influence of defendant's mother. The purpose of impeaching evidence is to destroy the credibility of a witness. *People v. Bradford*, 106 Ill. 2d 492, 499 (1985). Generally, any permissible kind of impeaching matter may be developed on cross-examination.

*People v. Collins*, 106 Ill. 2d 237, 269 (1985). However, extrinsic evidence, such as evidence of testimony from someone other than the witness himself, may be used to impeach a witness only on noncollateral matters. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 607.2, at 336-37 (5th ed. 1990).

Initially we note that the defendant did not make the required formal offer of proof to demonstrate the entire nature and substance of Chopski's testimony. See *Peeples*, 155 Ill. 2d at 457-58. Consequently, the only testimony which we can review are the few lines read to the trial court by defense counsel. These scant lines reveal that Chopski was told by the bus driver that Gaytan was first pulled from the bus by defendant's mother and then beaten and robbed by all three offenders. The trial court did not abuse its discretion in refusing the proffered testimony. The bus driver's account was consistent with Gaytan's testimony that defendant actively participated in the beating and robbery. The minor deviation in the bus driver's account that defendant's mother, rather than defendant, was responsible for removing Gaytan from the bus had negligible impeachment value. Further, we find that, because the State showed that defendant pleaded guilty to the robbery charge resulting from this incident, any error in excluding the Chopski testimony was so insignificant that defendant was not denied a fair sentencing hearing.

Defendant next contends that he was denied a fair sentencing proceeding when the trial court allowed an assistant State's Attorney to read to the jury a transcript of a preliminary hearing involving a robbery charge against defendant. Defendant relies on *People v. Sexton*, 162 Ill. App. 3d 607 (1987), and *People v. Valdery*, 65 Ill. App. 3d 375 (1978), in support of his argument that the State's tactic improperly enhanced the credibility of the unavailable witness by attaching to it the integrity of the State's Attorney's office.

Defendant has waived this issue. Although defendant objected to the State's publication of the transcript, the record reveals that the objection was based on the inability to cross-examine the robbery victim. Defendant made no objection to the particular witness who read the transcript. Moreover, defendant failed to include this issue in his post-sentencing motion. Therefore, the issue is waived. *Mahaffey*, 166 Ill. 2d at 27. We also do not believe that the question rises to the level of plain error. Application of the plain error exception is proper when the evidence is closely balanced or the error is so substantial that it denied the defendant a fair proceeding. *People v. Vargas*, 174 Ill. 2d 355, 363 (1996); *Mahaffey*, 166 Ill. 2d at 27.

We have already determined that the evidence at the second stage of defendant's sentencing hearing was not closely balanced. Moreover, the alleged error was not substantial. The witness who read the transcript was a former assistant State's Attorney who participated in the subject preliminary hearing. The witness' testimony of his personal involvement laid the foundation for the publication of the hearing transcript to the jury. Then, the witness simply read the transcript of the preliminary hearing into the record.

Defendant's reliance on *Sexton* and *Valdery* is misplaced. In *Sexton*, the State's Attorney testified that he personally investigated the case and found sufficient evidence to charge defendant. In addition, the State's Attorney testified that he ran an honest office and would not lie under oath because he could lose his license. *Sexton*, 162 Ill. App. 3d at 611. In reversing, the appellate court found the testimony highly prejudicial because, in essence, it allowed the State's Attorney's office to state its opinion that defendant was guilty. *Sexton*, 162 Ill. App. 3d at 611, 614-15. In *Valdery*, the appellate court reversed the defendant's conviction because the prosecu-

tor, during closing argument, vouched for the credibility and integrity of the State's witnesses. *Valdery*, 65 Ill. App. 3d at 378. In contrast, in the present case, the former assistant State's Attorney who testified did not comment on the credibility or integrity of the preliminary hearing witness. Nor did the assistant State's Attorney state his opinion on the evidence or defendant's guilt. This alleged error was not so substantial that it denied defendant a fair sentencing proceeding.

Defendant next contends he was denied a fair sentencing hearing because the prosecutor asked defense witnesses inflammatory and irrelevant questions during the mitigation portion of the proceedings. Defendant cites to three occasions when the prosecutor asked separate witnesses whether they recalled how precious their own daughters were at the age of 15 months. Defendant argues that the questions were not designed to yield any relevant information, but instead were intended to inflame the jury.

Defendant did not include this argument in his post-sentencing motion and, therefore, the issue is waived. *Thomas*, 178 Ill. 2d at 251; *Mahaffey*, 166 Ill. 2d at 27. Moreover, this alleged error was not substantial and, therefore, we decline to review it under the limited exception to the waiver rule. *Brown*, 172 Ill. 2d at 54-55; *Rissley*, 165 Ill. 2d at 406-07. First, we note that the trial court promptly sustained defendant's objections to the questions posed to witness Elouise Chambers. Thus, any prejudicial impact these particular questions may have had was cured. See *People v. Redd*, 173 Ill. 2d 1, 29 (1996); *People v. Hobley*, 159 Ill. 2d 272, 315 (1994). Although the trial court overruled defendant's objections to similar questions asked of the other two mitigating witnesses, we find that any resulting error was not of such magnitude as to deny defendant of a fair sentencing hearing.

#### b. *Closing Arguments*

In his next series of arguments, defendant raises several challenges to the prosecutor's closing arguments at the conclusion of the second stage of the capital sentencing hearing. First, defendant complains that the prosecutor made inflammatory appeals to the jurors' emotions by getting them to identify with the victim. Defendant cites *People v. Spreitzer*, 123 Ill. 2d 1, 38 (1988), in support of his contention that such argument was an improper invitation to the jury to enter into an "empathetic identification" with the victim. Specifically, defendant challenges this comment made by the prosecutor:

> "Picture what it was like. We sit here in this courtroom and we can't get the feeling for what it's like. We can't get the feel for what it must have been like on the west side for this poor little girl; what it must have been like in her last moments of life, a fifteen-month old baby who's [*sic*] diaper is wet."

The trial court overruled defendant's objection to the argument. The prosecutor continued on to recount the circumstances of the assault and describe the resulting injuries. Defendant did not object to the balance of the argument.

Arguments of counsel must be evaluated in the context in which they were made and the parties are allowed a wide latitude during closing argument. *People v. Burgess*, 176 Ill. 2d 289, 319 (1997). In addition, because the trial court is able to observe the proceedings and gauge the potential prejudicial effect of the parties' arguments, the control of closing arguments is left largely to the discretion of the trial court. *People v. Howard*, 147 Ill. 2d 103, 168 (1991). Considering these principles, we find that the trial court did not abuse its discretion in allowing the prosecution to make such an argument. Evaluating the statements in the context in which they were made, we do not believe that the prosecution attempted to get the jury to improperly empathize with the

victim. Rather, the prosecutor was simply reviewing the facts and circumstances of the crime with the jury.

Defendant next challenges prosecutorial remarks regarding the effect of the crimes on the victim's parents, which defendant argues was an improper appeal to the jury's emotions. In the argument defendant cites, the prosecutor stated:

> "How about his victims? What about their past? *** What should have been for [the victim's mother], a fond memory, shining lights of her life, her fifteen-month old daughter, instead, is a tragic memory ***. What about Laura's parents? What about the parents for Laura?"

This court has previously held that the specific harm and impact of the offense on the murder victim's survivors is relevant to the determination of the appropriate punishment for a capital defendant. *Howard*, 147 Ill. 2d at 156-58; see also *Payne v. Tennessee*, 501 U.S. 808, 825-27, 115 L. Ed. 2d 720, 735-36, 111 S. Ct. 2597, 2608-09 (1991). Although we have also indicated that it may be improper for the State to dwell upon the victim's family for too long in its argument (see, *e.g.*, *People v. Griffith*, 158 Ill. 2d 476, 484-85 (1994)), such was not the case here. The prosecutor's comments regarding the effect of the murder on Laura's parents were brief and isolated and, accordingly, were not so inflammatory as to constitute reversible error. See *Cloutier*, 178 Ill. 2d at 171-72.

Defendant's final challenge to the State's argument in summation involves prosecutorial remarks about what the victim may have accomplished with her life had she not been murdered. Defendant asserts that such argument impermissibly focused on the victim's characteristics rather than the appropriate factors of defendant's character and record. We note that of the large portion of the prosecutor's argument defendant challenges, defendant objected to only one comment. Accordingly, defendant's present contention is waived. See *Cloutier*, 178 Ill. 2d at 164. Further, we do not believe this alleged error

rises to the level of plain error. The evidence in aggravation/mitigation was not closely balanced and the prosecutor's brief comments about the victim were not so inflammatory as to deny defendant a fair sentencing hearing.

Defendant next complains of a portion of the prosecutor's arguments made in rebuttal. Defendant argues that the prosecutor's comments asked the jury to improperly ignore both the circumstances of the offense and defendant's character and to impose a death sentence on the prohibited speculation of defendant's future dangerousness. Defendant cites the following comments:

"He talks about his age. He's only 18 when he is killing this fifteen-month old baby. Well in the first year of the big leagues, he became he's very busy. He earned rookie of the year. By the time he's 18, he's ready for the hall of fame because he has committed the worse that we have. His age is aggravation, Ladies and Gentlemen of the jury. This is not mitigation. *** Turn it around. Turn it around on him. By the time he was 18, he had done the most violent act our society knows of. Think about the other crimes he would have committed if he wasn't arrested that date."

Initially, we observe that the trial court immediately sustained defendant's objection to the prosecutor's last comment regarding the crimes defendant would commit but for his arrest. In addition, the jury was instructed that closing arguments are not evidence. See Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2d ed. 1981). These circumstances lead us to conclude that any prejudice injected by this particular comment was cured. See *Henderson*, 142 Ill. 2d at 326.

Regarding the remainder of the cited argument, we find that the prosecutor's comments were fair response to defense counsel's own statements in summation. Defense counsel argued that defendant's young age and impressionability were mitigating factors which reduced defendant's responsibility for these crimes. In addition, defense counsel argued that, with only two felony rob-

bery convictions, defendant did not have a significant criminal history. The State responded by highlighting that although defendant was only 18, he had committed three violent felonies in a short span of time. The State's comments were made in the context of explaining defendant's age and past criminal record as an aggravating factor. Contrary to defendant's contention, we find the State's argument a fair comment on the evidence of defendant's character, record, and the circumstances of this offense.

In his last challenge involving closing arguments, defendant contends that he was denied a fair sentencing hearing because the State was allowed to give both opening and rebuttal closing arguments at the close of evidence. Defendant concedes that this court has repeatedly rejected this particular argument. See, *e.g., Fair*, 159 Ill. 2d at 95; *People v. Johnson*, 149 Ill. 2d 118, 159-61 (1992); *People v. Williams*, 97 Ill. 2d 252, 301-03 (1983). Because defendant provides no justification for reconsidering these prior decisions, we need not address his contention.

### c. *Jury Instructions*

Next, defendant raises four alleged errors regarding the jury instructions utilized at the aggravation/mitigation stage of sentencing. First, defendant contends that the trial court erred by refusing a nonpattern jury instruction he tendered which would have informed the jury that, if not sentenced to death, defendant could be sentenced to life imprisonment without parole. Defendant relies on *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133, 114 S. Ct. 2187 (1994), in support of his argument that the trial court was required to instruct the jury on alternative sentences defendant could receive because the State raised the issue of defendant's prior criminal record and that defendant committed this crime while serving probation.

Defendant did not raise the issue of the jury instructions given at the second stage of sentencing with any specificity in his post-sentencing motion and, therefore, the issue is waived. *Mahaffey*, 166 Ill. 2d at 27; *People v. Easley*, 148 Ill. 2d 281, 337 (1992). In addition, defendant concedes that this court has previously rejected his argument, holding that a defendant is not entitled to have the jury informed that if he is not sentenced to death, he is eligible for a range of possible alternate sentences, including natural life imprisonment. See *People v. Simpson*, 172 Ill. 2d 117, 150-52 (1996); *People v. Simms*, 143 Ill. 2d 154, 180-82 (1991).

Although a natural life jury instruction is required in cases involving multiple murders where natural life is the only available alternative to the death sentence (see *Gacho*, 122 Ill. at 260-63), this court has repeatedly declined to extend that rule to cases such as this where the defendant is statutorily eligible for a sentence less than natural life imprisonment (see, *e.g.*, *Simpson*, 172 Ill. 2d at 150-51; *People v. Williams*, 161 Ill. 2d 1, 70-71 (1994)). As we have previously observed, the *Simmons* decision does not require a departure from this court's previous holdings. *Simpson*, 172 Ill. 2d at 152. The holding in *Simmons* involved a situation where the defendant's future dangerousness was at issue and state law mandated that if the defendant was not sentenced to death, the only alternative sentence was natural life imprisonment. *Simmons*, 512 U.S. at 156, 129 L. Ed. 2d at 138, 114 S. Ct. at 2190.

Here, defendant's case does not involve the circumstances present in *Simmons*, for if defendant had not received the death penalty, the trial court could have imposed any sentence within the permissible statutory range for the crime of murder. Moreover, in *Simmons*, the prosecution made repeated mention of the defendant's future dangerousness and urged the jury to impose

the death penalty as an act of "self-defense." *Simmons*, 512 U.S. at 157, 129 L. Ed. 2d at 139, 114 S. Ct. at 2190-91. A careful review of the record in the present case reveals that defendant's future dangerousness was not at issue during the aggravation/mitigation stage of sentencing. The State's arguments regarding defendant's prior convictions and the fact that this crime was committed while he was serving probation were made in the context of explaining defendant's past criminal record as an aggravating factor. Unlike *Simmons*, here the State did not argue that society needed to be protected from defendant. See *People v. Franklin*, 167 Ill. 2d 1, 24-25 (1995). Therefore, defendant was not entitled to an instruction on alternative sentences and, accordingly, the trial court did not err in denying defendant's tendered non-IPI jury instruction. See *Simpson*, 172 Ill. 2d at 151-52; *Simms*, 143 Ill. 2d at 181-82.

Next, defendant contends that the trial court erred by refusing to instruct the jury that nonstatutory mitigating factors could include the fact that "the defendant was youthful." Instead, the trial court instructed the jury that mitigating factors include "[a]ny other reason supported by the evidence why the defendant should not be sentenced to death." See Illinois Pattern Jury Instructions, Criminal, No. 7C.06 (2d ed. Supp. 1989). The jury was also instructed that "[m]itigating factors may be found in any evidence presented during *** the death penalty hearing." See Illinois Pattern Jury Instructions, Criminal, No. 7C.04 (2d ed. Supp. 1989). Defendant argues that, without an instruction specifically informing them of the mitigating factor of his young age, the jury was not adequately guided. This lack of guidance, defendant argues, renders his death sentence constitutionally unacceptable.

It is well established that at the aggravation/mitigation stage of sentencing, the sentencer may not be

precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence. *E.g., Buchanan v. Angelone,* 522 U.S. 269, 276, 139 L. Ed. 2d 702, 709-10, 118 S. Ct. 757, 761 (1998); *Eddings v. Oklahoma,* 455 U.S. 104, 113-14, 71 L. Ed. 2d 1, 10-11, 102 S. Ct. 869, 876-77 (1982). The standard for determining whether jury instructions violate the protections of the eighth and fourteenth amendments is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.' " *Buchanan,* 522 U.S. at 276, 139 L. Ed. 2d at 710, 118 S. Ct. at 761, quoting *Boyde v. California,* 494 U.S. 370, 380, 108 L. Ed. 2d 316, 329, 110 S. Ct. 1190, 1198 (1990).

Here, the jury instructions did not violate these constitutional principles. The instructions did not preclude the jury's consideration of any mitigating evidence, including defendant's age. The instructions informed the jurors that they could base their decision on any evidence and consider any reason a mitigating factor. Although the trial court refused the defendant's tendered instruction which specifically identified defendant's age as a mitigating factor, it advised defense counsel that he could make such an argument. During closing argument, defense counsel repeatedly referred to defendant's youth and susceptibility as mitigating circumstances. There is no reasonable likelihood that the jury applied the instructions in a way that prevented the consideration of defendant's age.

In a related issue, defendant contends that the pattern jury instructions used at the second stage of sentencing fail to adequately guide the jury's discretion, allowing the jury to arbitrarily and capriciously impose a sentence of death. Defendant acknowledges that this court has previously rejected this same argument. See *People v.*

*Miller*, 173 Ill. 2d 167, 199-200 (1996); *Brown*, 172 Ill. 2d at 55-57. However, defendant urges us to reconsider our prior decisions, referring to studies performed separately by Professor Hans Zeisel and Professor Shari Diamond as support for his request.

Initially, we observe that defendant failed to submit copies of the studies or cite to any other relevant authority as support for his contention and, therefore, the issue is waived. 155 Ill. 2d R. 341(e)(7); *People v. Dinger*, 136 Ill. 2d 248, 254 (1990). Nevertheless, we note that our prior decisions which rejected defendant's contention also found the Zeisel and Diamond studies unpersuasive. See, *e.g.*, *Brown*, 172 Ill. 2d at 55-57. Further, we observe that the United States Supreme Court recently emphasized that, at the second stage of sentencing, guiding the jury's discretion is not required and, in fact, complete jury discretion at this stage is constitutionally permissible. See *Buchanan*, 522 U.S. at 276, 139 L. Ed. 2d at 710, 118 S. Ct. at 761-62. Accordingly, we also find defendant's contention to be without merit.

In his final challenge to the jury instructions, defendant argues that the use of the plural in the phrase "no mitigating factors sufficient to preclude the imposition of the death sentence" prevents the sentencer from finding that a single mitigating factor is sufficient to preclude death. See Illinois Pattern Jury Instructions, Criminal, Nos. 7C.05, 7C.06 (2d ed. Supp. 1989); Ill. Rev. Stat. 1985, ch. 38, par. 9—1(g). Defendant asserts that a reasonable juror would interpret the instructions as requiring the existence of at least two mitigating factors before he or she could vote for a sentence other than death. Defendant did not raise a specific objection to the jury instructions on this basis. In addition, defendant did not tender a truly alternative instruction at trial, as his tendered instructions utilized the exact same phrase. Therefore, we find the alleged error waived. See *Rissley*, 165 Ill. 2d

at 406-07. Contrary to defendant's contention, we find that defendant's claim does not fall within the limited exception to the waiver rule, as the evidence in aggravation and mitigation was not closely balanced and the alleged error was not substantial. *Brown*, 172 Ill. 2d at 54-55; *Rissley*, 165 Ill. 2d at 406-07.

### 4. Sentencing

Defendant contends that, due to the significant and compelling factors in mitigation, his sentence of death is excessive. Specifically, defendant cites his young age at the time of the offense and his "abusive and unstable upbringing" by his drug-addicted mother. This court has held that the decision of a capital sentencing jury will not be overturned lightly, particularly where that decision is amply supported by the record. *Hooper*, 172 Ill. 2d at 77. The evidence here establishes that the 15-month-old victim was brutally beaten by defendant and then subjected to a savage sexual assault to her vagina and rectum; the injuries she sustained from both the beating and the sexual assault contributed to her death. Moreover, the State's evidence revealed that defendant had two prior convictions for violent felonies and was serving probation at the time of this murder. Further, much of defendant's evidence could be deemed aggravating by the sentencing jury. See, *e.g., Henderson*, 142 Ill. 2d at 339 (evidence of an upbringing which causes a defendant to become violent and aggressive can be considered in aggravation). On this record, we cannot say that defendant's sentence is excessive or inappropriate. Accordingly, we decline to disturb the jury's determination. See, *e.g., Howard*, 147 Ill. 2d at 170-71.

### 5. Constitutionality of the Death Penalty

As a final matter, defendant raises 10 separate challenges to the constitutionality of the Illinois death penalty statute (Ill. Rev. Stat. 1985, ch. 38, par. 9—1).

Defendant concedes that this court has previously considered and rejected each of his contentions. See *People v. Page*, 155 Ill. 2d 232, 283-84 (1993); *People v. Thomas*, 137 Ill. 2d 500, 537-39 (1990); *People v. Young*, 128 Ill. 2d 1, 59-60 (1989); *People v. Evans*, 125 Ill. 2d 50, 98-99 (1988); *People v. Stewart*, 123 Ill. 2d 368, 378-79 (1988); *People v. Spreitzer*, 123 Ill. 2d 1, 45-46 (1988); *People v. Enoch*, 122 Ill. 2d 176, 202-03 (1988); *People v. Orange*, 121 Ill. 2d 364, 390-91 (1988); *People v. Guest*, 115 Ill. 2d 72, 110-12 (1986); *People v. Lewis*, 88 Ill. 2d 129, 144-46 (1981). Because defendant provides no justification for reconsidering these prior decisions, we will not address these issues here.

## CONCLUSION

For the reasons stated above, we affirm defendant's sentence of death. We hereby direct the clerk of this court to enter an order setting Wednesday, May 12, 1999, as the date on which the sentence of death entered by the circuit court of Cook County is to be carried out. Defendant shall be executed in the manner provided by law (725 ILCS 5/119—5 (West 1994)). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Tamms Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*

CHIEF JUSTICE FREEMAN, specially concurring:

I concur in the judgment of the court, and I join most of the majority opinion. I am troubled, however, by what I perceive to be the majority's nonchalant and, at times, inconsistent treatment of several of the arguments defendant has procedurally defaulted. I, therefore, write separately to express these concerns.

I

Before I address the specific portions of the majority

opinion with which I disagree, an overview of our precedents that deal with the issue of waiver is necessary. This court has long required that, in order to raise an issue as a ground for reversal on appeal, a defendant *both* object contemporaneously at trial to the matter and include it in a written post-trial motion. The failure to do so results in the waiver, or more appropriately the procedural default, of the issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Precup*, 73 Ill. 2d 7, 16 (1978). This rule applies to constitutional issues as well as to nonconstitutional issues. *People v. Pickett*, 54 Ill. 2d 280 (1973).

In capital cases, this court has recognized only three bases for excusing a procedural default on direct review and reaching the substantive aspects of defendant's assertions of error. The first basis encompasses those errors for which a timely trial objection was made, but which were not included in the post-trial motion. Under this exception, the procedural bar will be excused if the claims could be asserted later in a petition filed under the Post-Conviction Hearing Act. *People v. Keene*, 169 Ill. 2d 1, 10 (1995); *People v. Mitchell*, 152 Ill. 2d 274, 284-85 (1992); *Enoch*, 122 Ill. 2d at 190. The second category consists of challenges to the sufficiency of the evidence. *Keene*, 169 Ill. 2d at 10; *Enoch*, 122 Ill. 2d at 190. The third category encompasses "plain" errors. *Keene*, 169 Ill. 2d at 10; *Enoch*, 122 Ill. 2d at 190. With respect to plain error, Supreme Court Rule 615(a) provides the following:

> "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a).

This court has consistently interpreted Rule 615(a) to allow a court of review to consider substantively an error that has not been properly preserved when (i) the evi-

dence is closely balanced or (ii) the purported error is of such magnitude as to deny defendant a fair and impartial trial. *People v. Vargas*, 174 Ill. 2d 355, 363 (1996) (and cases cited therein). In sum, once a reviewing court holds that an issue has been procedurally defaulted, one of the above exceptions must be present in order for that court to pass upon the substantive aspects of the claim.

## II

As today's opinion clearly demonstrates, defendant failed to preserve properly several of the errors he now contends necessitate reversal. In most instances, the court agrees with the State that the issue has been waived and that one of the above exceptions to the waiver doctrine—the plain error rule—has not been met. See 185 Ill. 2d at 507, 511, 513-14, 519. However, in three other instances, the court departs from this well-established practice and embarks on what I consider to be an analysis which is either internally contradictory or contrary to our previous case law. I address each instance in turn.

The first instance to which I refer occurs during the court's discussion of the eligibility phase of defendant's capital sentence hearing. As the court notes, defendant specifically challenges the circuit court's admission of (i) the 26-count indictment returned against defendant, (ii) the certified copy of conviction showing defendant had been found guilty of all 26 counts, (iii) Marketta Hampton's observations of Laura in the hospital and her identification of various objects in her apartment, (iv) police testimony regarding defendant's initial noninculpatory statement, and (v) police testimony regarding the sequences of the criminal investigation. After reviewing the purpose of the eligibility phase of the hearing and its attendant evidentiary standards, the court then states:

"Despite defendant's assertion otherwise, we find that the trial court did not abuse its discretion in admitting the

specified evidence. Initially, we observe that, as to most of the allegedly improper evidence, defendant failed to either object during the sentencing hearing or raise the issue in his post-sentencing motion. Therefore, unless deemed to be plain error, defendant has waived his challenge to most of the specified evidence. [Citation.] Nevertheless, because defendant raises general allegations of plain error (134 Ill. 2d R. 615(a)), we address his particular evidentiary challenges." 185 Ill. 2d at 491.

Notwithstanding the fact that, in the above-quoted paragraph, the court has already held that the circuit court did not abuse its discretion in admitting the complained-of evidence, the court goes on to discuss each piece of evidence individually, noting at times that defendant did not object to the evidence at trial. See, *e.g.*, 185 Ill. 2d at 491-95.

The majority's treatment of this claim is inherently contradictory. First, the court begins its discussion by specifically holding that the circuit court did not abuse its discretion in admitting the specified evidence. This, of course, constitutes a ruling on the merits of defendant's claims in their entirety. Despite this initial, substantive holding, the court in the next two sentences states that defendant failed to preserve properly most of these challenges and that unless deemed to be "plain error," defendant has "waived" his challenge to these claims. The court then explains that because defendant has raised "general allegations of plain error," it will address the particular challenges. Thus, under the majority's analysis, the words "plain error" appear to have talisman-like effect—they serve to transform claims which have been otherwise procedurally defaulted into claims which are automatically subject to substantive review. However, as I noted previously, in order to reach the merits of a procedurally defaulted claim under the plain error rule, one of the two prongs of the rule must first be present. See *Vargas*, 174 Ill. 2d at 363. After reading the majority's analysis, I have trouble identifying which of defendant's

five specific challenges were procedurally defaulted and which were properly preserved. This, in turn, makes it difficult to discern whether the majority has rendered its judgment with respect to this issue on "waiver" principles or on the merits of the claim. Moreover, because the court initially holds that the circuit court did not abuse its discretion in admitting any of the evidence, I am confused as to why it is necessary to continue on with a discussion of each piece of evidence. The subsequent individualized treatment of each claim appears to contradict the first sentence in the above-quoted paragraph.

In my opinion, the better approach would be to refrain from holding, *at the outset*, that the circuit court did not abuse its discretion in admitting the five pieces of evidence. Indeed, I would simply discuss each of the five pieces of evidence individually, noting, where appropriate, whether defendant procedurally defaulted the challenge and, if so, whether a basis exists upon which to excuse the procedural bar. My review of the record indicates that defendant failed to object at trial to the admission of (i) the 26-count indictment and (ii) the certified copy of conviction. Moreover, defendant failed to include these contentions in his post-sentencing motion. As a result, the contentions have been procedurally defaulted. None of the bases for excusal of the default as set forth in *Enoch* are present with respect to these evidentiary challenges. The claim is not based on the sufficiency of the evidence. See *Enoch*, 122 Ill. 2d at 190. Moreover, plain error cannot be used as a basis for excusing the default because neither is the evidence closely balanced nor is the error of such magnitude as to deny defendant a fair and impartial trial. Of course, "[b]efore plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights

was committed." *People v. Precup*, 73 Ill. 2d 7, 17 (1978). I note that, in undertaking the plain error analysis contemplated by Rule 615(a), it is necessary to consider the underlying merits of the claims on only a rudimentary level. See *People v. Young*, 128 Ill. 2d 1, 54 (1989). In so doing, it becomes readily apparent that an error affecting a substantial right has not been committed in this case. See *People v. Kokoraleis*, 132 Ill. 2d 235 (1989) (finding no reversible error where redundant multiple convictions were admitted into evidence). Plain error being absent, no basis exists to excuse the procedural bar with respect to the admission of the indictment and certified convictions. As for the remaining three evidentiary challenges which were properly preserved, I agree with the court that the circuit court did not abuse its discretion by admitting them into evidence. See 185 Ill. 2d at 492-93. Under my analysis, the majority's internally inconsistent holding of both "waiver" and "no abuse of discretion" is avoided. The claims which have been procedurally defaulted are resolved in accordance with *Enoch* and its progeny, and the claims which were properly preserved are given substantive review.

I also disagree with the court's treatment of defendant's contention that the circuit court erroneously allowed into evidence certain hearsay testimony from four of the State's witnesses during the aggravation/mitigation phase of the hearing. See 185 Ill. 2d at 505-06. According to my colleagues in the majority, because defendant failed (i) to specify the particular testimony he deems hearsay and (ii) to include the issue in his post-sentencing motion, "the issue is waived." 185 Ill. 2d at 505. The court then notes that "[e]ven if defendant had properly preserved this issue, we would find it meritless." The reason that my colleagues would find this issue "meritless" is because this court has long held that hearsay evidence may be admitted during the aggravation/

mitigation phase of a capital sentence hearing so long as it is relevant and reliable. See 185 Ill. 2d at 505. However, given the fact that defendant has not identified the portions of the testimony about which he now complains, I am somewhat at a loss to understand how the court can say that this claim would be "meritless" if addressed substantively. If defendant has not bothered to identify to either this court or the circuit court the precise testimony complained of, how then can it be determined that the testimony is, in fact, reliable and relevant? For this reason, I would hold that defendant has procedurally defaulted this claim and that no basis exists to excuse the bar. More importantly, I would refrain from commenting on the relative strengths of its merits.

I must also take issue with the majority's substantive discussion of defendant's contention that the circuit court erred by refusing a nonpattern jury instruction that would have informed the jury that defendant could be sentenced to life imprisonment without parole if he was not sentenced to death. See 185 Ill. 2d at 515. The majority first begins its analysis of this issue by holding that because defendant did not raise the claim with any specificity in his post-sentencing motion, it is waived. 185 Ill. 2d at 515-16. Nevertheless, the majority then proceeds to reject defendant's claim on substantive grounds. See 185 Ill. 2d at 516-17. I, for one, cannot discern the basis for this substantive discussion. If the claim is waived, as the court states, our case law, as set forth above, dictates that one of the three exceptions must be satisfied before the claim can be addressed in this manner. Under *Enoch*, defendant's claim need not rise to the level of plain error in order for this court to excuse the procedural bar *if* defendant made a contemporaneous trial objection and the error is such that it could be asserted later in a post-conviction proceeding. I note that defendant did, in fact, object at trial—he tendered

his own instruction to the circuit court—and he has framed this claim as a fourteenth-amendment-based due process deprivation, as well as an eighth amendment violation against cruel and unusual punishment. Thus, defendant's constitutionally based claim is one that may be entertained under the Post-Conviction Hearing Act. See 725 ILCS 5/122—1 (West 1994). Because the purported error is one which can be accommodated under the Post-Conviction Hearing Act, this court may, under both *Enoch* and *Keene*, excuse the procedural bar. The contention, however, fails substantively for the reasons stated in the opinion. Under my analysis, the principles of procedural default, as well as the exceptions to them, are properly applied in accordance with this court's own precedent. More importantly, the analysis actually allows the court to reach, substantively, the merits of defendant's constitutional claim and gives the reason for doing so.

I, of course, acknowledge that the concept of waiver in Illinois serves as a limitation on the parties and not on the court. For this reason, a court of review is always free to refrain from invoking the doctrine of waiver in order to reach the merits of a given issue. This court, in fact, has in the past often chosen to do just that. See, *e.g.*, *People v. Farmer*, 165 Ill. 2d 194, 200 (1995); *People v. Bailey*, 159 Ill. 2d 498, 506 (1994). In such cases, we *refrained* from stating that the claim was, indeed, waived. In today's opinion, however, the court does not do this with respect to several of the issues I have discussed in this concurrence. Rather, the court, at times, holds that the claims are waived and then, without any explanation whatsoever, goes on to discuss the substantive merits of each claim. The court cannot have it both ways. If the court wants to reach the merits of these issues, then it should refuse, from the outset, to invoke the waiver doctrine. If the court wishes to apply the bar, then it should do so, subject only to the exceptions established in *Enoch*.

But the court cannot, and should not, do both. By its actions today, the court inadvertently diminishes the role of the waiver doctrine in appellate review and creates confusion for application of the doctrine in future cases.

I must note that my concern in this area is not just an academic one. Nor does it relate to matters of mere "tidiness" in opinion-writing style. The manner in which a state court expresses the reasons for its judgment affects the scope of review in later federal proceedings. The federal judiciary has continually struggled with the ambiguity created by the type of unclear state-court pronouncements concerning procedural default which I identify in this case, particularly in the area of *habeas corpus*. See, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); *Harris v. Reed*, 489 U.S. 255, 103 L. Ed. 2d 308, 109 S. Ct. 1038 (1989). State-court judgments which rest on an independent and adequate state ground are outside the scope of *habeas corpus* review. See *Coleman*, 501 U.S. at 729-32, 115 L. Ed. 2d at 655-57, 111 S. Ct. at 2553-55. For example, a federal claim which has been procedurally defaulted in state court will only be subject to *habeas* review if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or else demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497 (1977). The United States Supreme Court has emphasized that the above "cause and effect" standard serves to eliminate any inconsistency between the respect federal courts show for state procedural rules and the respect they show for their own procedural rules. *Coleman*, 501 U.S. at 751, 115 L. Ed. 2d at 670, 111 S. Ct. at 2565 (recognizing that " '[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by

the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it' ''), quoting *Yakus v. United States*, 321 U.S. 414, 444, 88 L. Ed. 835, 859, 64 S. Ct. 660, 677. A federal court in *habeas* proceedings, however, cannot properly apply the foregoing principles if the underlying state-court judgment is abstruse. The ambiguity leaves the federal court with the unenviable task of having to decipher whether the state court resolved the issue on the independent and adequate state ground, *i.e.*, procedural default, or on substantive principles grounded in or interwoven with federal law. Although the United States Supreme Court has acknowledged that it has "no power to tell state courts how they must write their opinions," the Court has nonetheless attempted to alleviate the very real problem caused by ambiguous language by specifically "encourag[ing] state courts to express plainly, in every decision potentially subject to federal review, the grounds upon which their judgments rest." *Coleman*, 501 U.S. at 739, 115 L. Ed. 2d at 662, 111 S. Ct. at 2559. Under the analyses I offer in this concurrence, all ambiguity is avoided, and a clear statement of the grounds for the resolution·of each of defendant's claims is readily apparent.

## III

To be sure, many state-court opinions include within their analyses the same imprecise language contained in today's opinion. Nevertheless, the fact that other courts may have been indiscriminate in their examinations should not guide our own review, nor should it cause us to ignore our own precedent. In this respect, I must iterate a point made throughout this concurrence: if an issue is indeed "waived," then our case law clearly dictates that one of the three bases for excusing the procedural bar must exist in order for the court to reach the substantive merits of the defaulted claims. These exceptions, as established in this court's capital jurisprudence, work to

ensure that mechanical application of the waiver doctrine will not allow serious errors that relate to either constitutional violations or fundamental fairness to go unnoticed and uncorrected in capital cases. In other words, the exceptions temper the potential harshness which attends the waiver doctrine. In my view, the proper application of this doctrine to the defaulted claims I discuss here not only would harmonize the court's treatment of all of the procedurally defaulted claims that are raised in this appeal, but would also allow the court to accommodate the suggestion made to us in *Coleman* by our colleagues on the United States Supreme Court.

In all other respects, I join in the court's opinion.

JUSTICE McMORROW joins in this special concurrence.

JUSTICE HARRISON, dissenting:

For the reasons set forth in my dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Accordingly, we should vacate Terrell's sentence of death and remand the cause to the circuit court for imposition of a sentence other than death.