LIU, J., Concurring.
I join today’s opinion and write separately to add two comments concerning the trial court’s restriction on voir dire of prospective jurors. (See maj. opn., ante, at pp. 164-169.)
I.
As the court notes, we said in People v. Cash (2002) 28 Cal.4th 703 [122 Cal.Rptr.2d 545, 50 P.3d 332] that “death-qualification voir dire must avoid two extremes. On the one hand, it must not be so abstract that it fails to identify those jurors whose death penalty views would prevent or substantially impair the performance of their duties as jurors in the case being tried. On the other hand, it must not be so specific that it requires the prospective jurors to prejudge the penalty issue based on a summary of the mitigating and aggravating evidence likely to be presented. [Citation.] In deciding where to strike the balance in a particular case, trial courts have considerable discretion. [Citations.]” (Id. at pp. 721-722.)
In exercising such discretion, trial courts should be mindful that the risks on the two sides of the balance are not symmetrical. If voir dire is too abstract, it may fail to identify a prospective juror whose views on the death penalty prevent him or her from impartially weighing the facts and following the law. (See Rosales-Lopez v. United States (1981) 451 U.S. 182, 188 [68 L.Ed.2d 22, 101 S.Ct. 1629] [“Without an adequate voir dire the trial judge’s responsibility to remove prospective jurors who will not be able impartially to follow the court’s instructions and evaluate the evidence cannot be fulfilled.”].) As a result, an unqualified juror may end up serving on the jury. That was the basis for reversal of the conviction in Cash. By restricting voir dire with respect to the defendant’s commission of prior murders, the trial court in Cash “created a risk that a juror who would automatically vote to impose the death penalty on a defendant who had previously committed *182 murder was empanelled and acted on those views, thereby violating defendant’s due process right to an impartial jury.” (People v. Cash, supra, 28 Cal.4th at p. 723.)
If voir dire is too specific, the risk is that prospective jurors will be asked to prejudge the case. A prospective juror may have no categorical biases such as “I will automatically vote for the death penalty where the murder victim is a child.” But a prospective juror’s answers to questions about the specifics of a case may suggest how he or she is likely to vote upon hearing the evidence to be presented at trial. Those answers may lead the prosecution or the defense to peremptorily challenge a prospective juror who is in fact impartial and qualified to serve.
For obvious reasons, we do not want the conduct of voir dire to encourage the parties to ask prospective jurors to prejudge the case. But asking a prospective juror too many questions about the particular circumstances of a case does not have the same potential for mischief as asking too few questions. Asking a potential juror too many questions may tip the juror’s hand as to how the juror might actually vote in the case, which might lead to a peremptory challenge against a qualified juror. Yet peremptory challenges are usually exercised against qualified jurors in any event. By contrast, not asking enough questions leaves a dearth of information, which may result in the empanelment of an unqualified juror—a juror whose death penalty views will substantially impair his or her ability to impartially apply the law to the facts. The latter implicates the fairness of the trial in a manner that the former does not.
This asymmetry does not by itself suggest a general rule for achieving the balance required by Cash. Because the facts of each case are integral to determining the proper scope of voir dire, trial courts have broad discretion in this area, and in a given case there may be several approaches to death-qualification voir dire that are reasonable and not reversible for abuse of discretion. However, in exercising discretion, trial courts should take into account the important distinction between the risk of empanelling an unqualified juror and the risk of subjecting a qualified juror to peremptory challenge. This distinction may be consequential to a trial court’s judgment not only as to what is a reasonable approach to voir dire, but also as to what is the most fair approach among several possible reasonable approaches.
II.
The court rejects defendant’s claim that the trial court should have allowed death-qualification voir dire on the fact that two of the murder victims were children. (See maj. opn., ante, at pp. 166-168.) I agree that the trial court’s *183 handling of voir dire was not unreasonable in light of the circumstances here—most notably, the fact that defendant did not personally kill the child victims. But this conclusion must be understood as a fact-bound exception to a more general rule.
As the court explains (maj. opn., ante, at pp. 166-167), we have repeatedly suggested, albeit in dicta, that the murder of a child falls within the category of circumstances that have the potential to “cause a reasonable juror—i.e., one whose death penalty attitudes otherwise qualified him or her to sit on a capital jury—invariably to vote for death, regardless of the strength of the mitigating evidence.” (People v. Zambrano (2007) 41 Cal.4th 1082, 1122 [63 Cal.Rptr.3d 297, 163 P.3d 4], disapproved on another ground in People v. Doolin (2009) 45 Cal.4th 390, 421, fia. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11]; see People v. Roldan (2005) 35 Cal.4th 646, 694 [27 Cal.Rptr.3d 360, 110 P.3d 289], disapproved on another ground in Doolin, supra, 45 Cal.4th at p. 421, fin. 22; see also People v. Tate (2010) 49 Cal.4th 635, 658 [112 Cal.Rptr.3d 156, 234 P.3d 428] [quoting Roldan].)
In People v. Alfaro (2007) 41 Cal.4th 1277 [63 Cal.Rptr.3d 433, 163 P.3d 118], we recognized that the age of a minor victim is an important circumstance on which the parties should be allowed to question prospective capital jurors. The defendant in Alfaro, who was charged with killing a nine-year-old girl, claimed error in the trial court’s refusal to allow her to voir dire prospective jurors with specific questions regarding the minor victim’s age. We rejected the claim under the circumstances there, noting that “[ajlthough the trial court rejected [the] defendant’s specific questions concerning whether the victim’s age would impair the prospective jurors’ ability to remain fair and impartial, it nonetheless permitted extensive questioning on this subject.” (Id. at p. 1311, fn. omitted.) Alfaro concluded: “All of the prospective jurors repeatedly were made aware of the unusual circumstances of this case, and numerous prospective jurors revealed that the victim’s young age would prevent their serving as fair and impartial jurors. Numerous other prospective jurors candidly told the court that this circumstance would weigh heavily on them, but maintained they nonetheless could retain an open mind, and defense counsel was permitted to fully examine each of those jurors regarding the sincerity of those stated beliefs. In light of the exhaustive examination of the issue during the penalty retrial, we discern no prejudicial error in the trial court’s rejection of defendant’s specific proposed question regarding the victim’s age.” (Id. at pp. 1312-1313.) Our observation in Alfaro that “numerous prospective jurors revealed that the victim’s young age would prevent their serving as fair and impartial jurors” confirms that when a defendant stands accused of personally killing a child, that fact by itself is a circumstance with demonstrated potential to cause otherwise reasonable jurors to invariably vote for death regardless of the mitigating circumstances.
*184 Decisions from other states support this conclusion. In State v. Jackson (2005) 107 Ohio St.3d 53 [2005 Ohio 5981, 836 N.E.2d 1173], the Ohio Supreme Court reversed a death judgment for failure to allow voir dire regarding a three-year-old murder victim’s age. Jackson explained: “Protecting children from harm is a common human characteristic, and many people harbor strong feelings and emotions whenever a child is a victim of a violent crime. Some prospective jurors, when presented with this fact, may have been unable to remain dispassionate and impartial when deciding whether the death sentence should be imposed. The possibility that one juror might not have fairly considered sentencing options and may have voted for the death penalty solely because appellant murdered a three-year-old child is a risk too great to ignore. ‘If even one such juror is empaneled and the death sentence is imposed, the State is disentitled to execute the sentence.’ [Citation.]” (Id., 836 N.E.2d at pp. 1191-1192.)
Other decisions have recognized that informing prospective jurors that the murder victim was a child is important to ensuring the selection of an impartial jury. In People v. Terrell (1998) 185 Ill.2d 467 [236 Ill.Dec. 723, 708 N.E.2d 309], the Illinois Supreme Court found no abuse of discretion in the trial court’s refusal to ask a specific voir dire question proposed by the defendant regarding the minor victim’s age, reasoning that the trial court had “informed the venire that the victim involved was a child” and had “asked each venireperson whether he or she would automatically vote to impose death without consideration of the mitigating evidence.” (Id., 708 N.E.2d at p. 318.) In State v. Moore (1991) 122 N.J. 420 [585 A.2d 864], the New Jersey Supreme Court reached the conclusion that “as a whole, the voir dire was sufficiently probing in its attempt to weed out” unqualified jurors in part on the ground that the prosecutor and defense counsel had asked prospective jurors about the fact that one of the murder victims was a child. (Id., 585 A.2d at p. 878.) The court in Moore explained that “voir dire should allow more open-ended questioning on the issue of the status of the victims as it relates to any prejudice or predisposition affecting the juror’s ability to adjudge fairly in the guilt phase or the ability to consider mitigating evidence in any penalty phase.” (Id. at p. 880.)
Our conclusion that “on the record here, the trial court did not err in precluding mention of the circumstance that two of the victims were children” (maj. opn., ante, at p. 168) rests on the unique facts of this case—in particular, the fact that defendant did not personally kill the child victims. Nothing we say today erodes the general rule, apparent in the decisions of our court and others, that where a capital defendant stands accused of personally killing a child, that fact by itself is so potentially inflammatory as to cause an *185 otherwise qualified juror to invariably vote for death, rendering the preclusion of voir dire on that fact an abuse of discretion. With that understanding, I concur in the court’s opinion.
Appellant’s petition for a rehearing was denied October 17, 2012.