2022 IL App (2d) 210049-U
No. 2-21-0049
Order filed March 18, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) ) ) | Nos. 17-CF-240 17-CF-562 17-CF-615 19-CF-288 |
| DEWAYNE KELLY, | ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Hudson concurred in the judgment.

**ORDER**

¶ 1     *Held*: Admission of domestic-violence victim's testimony that she had banned defendant from her apartment was relevant and not unduly prejudicial. Since there was no error in the admission of the evidence, defense counsel's failure to preserve the issue for appeal was neither plain error nor ineffective assistance of counsel.

¶ 2     Defendant, Dewayne Kelly, appeals his domestic battery convictions (720 ILCS 5/12-

3.2(a)(1), (a)(2) (West 2018)) in case No. 19-CF-288.[1]  His primary argument is that we should consider, under the plain-error doctrine, his otherwise forfeited claim that the trial court erred when it admitted improper other-crimes evidence in the form of the victim's testimony that she had banned him from her apartment and asked the police to ban him.  Alternatively, he argues that defense counsel was ineffective for filing an untimely posttrial motion and thus failing to preserve the evidentiary issue.  We hold that defendant has not demonstrated error in the admission of the challenged evidence.  It follows that he has also failed to demonstrate that he suffered prejudice from defense counsel's failure to preserve the issue.  We thus affirm.

¶ 3                                     I. BACKGROUND

¶ 4     A grand jury indicted defendant on six counts related to a June 2, 2019, incident in which defendant forced his way into the apartment of B.J., despite being on notice that he was banned from the premises, and grabbed her by the neck and arm.  The charges were (1) aggravated domestic battery (strangulation) (720 ILCS 5/12-3.3(a-5) (West 2018)), (2) domestic battery (bodily harm: grabbing B.J. by the throat and dragging her) (720 ILCS 5/12-3.2(a)(1) (West 2018)); (3) domestic battery (insulting or provoking contact: grabbing B.J. by the arm) (720 ILCS 5/12-3.2 (a)(2) (West 2018)), (4) theft of property worth $500 or less ($380 in cash) (720 ILCS 5/16-1(a)(3)(A) (West 2018)), (5) criminal damage to property (breaking an apartment door, causing damage of $300 or less) 720 ILCS 5/21-1(a)(1) (West 2018)), and (6) criminal trespass to real property (entry into a residence after receiving notice that such entry was forbidden) (720 ILCS 5/21-3(a)(2) (West 2018)).  The State charged the two domestic battery counts as Class 4

_____

[1] Defendant's notice of appeal also lists case Nos. 17-CF-240, 17-CF-562, and 17-CF-615, but he presents no arguments with respect to those cases.

felonies based on defendant's prior conviction of violating an order of protection. See 720 ILCS 5/12-3.2(b) (West 2018).

¶ 5    Before trial, the State filed, per section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2018)), a "Notice to Introduce Evidence of Domestic Violence" (section 115-7.4 motion). Section 115-7.4 provides that "evidence of the defendant's commission of another offense or offenses of domestic violence is admissible" in a domestic violence prosecution and "may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.4(a) (West 2018). In its section 115-7.4 motion, the State indicated that it intended to offer evidence of the following:

> "3. O[n] April 4, 2019, police were called to the victim's residence and the defendant had her locks change[d] so she couldn't get into her apartment. This was done in an attempt to harass the victim, as the defendant did not reside there but had a copy of her key. The victim told officers she was afraid of the defendant and wanted a no trespass order served.
>
> 4. On May 3, 2019, the defendant was served with a no trespass notice to the victim's residence."

The court agreed with defendant that neither quoted paragraph described an act of domestic violence, making section 115-7.4 inapplicable. Thus, the court denied the motion. However, the court noted that the evidence might be admissible on bases other than section 115-7.4. The State remarked that it would seek to introduce evidence of the no-trespass notice as an element of the trespass charge.

¶ 6     The State *nolle prossed* all but three charges: aggravated domestic battery (strangulation), domestic battery (bodily harm), and domestic battery (insulting or provoking contact) (criminal trespass to real property was among the dismissed charges).

¶ 7     Defendant had a jury trial on the remaining charges. The State called B.J. as its first witness. She testified that she was in a dating relationship with defendant, wanted their relationship to continue, and was eight months pregnant with their child. Early in its direct examination, the State asked B.J. about her decision to ban defendant from her home:

> "Q. Okay. So, [B.J.], I want to talk to you about some incidences that happened between June and July of 2019 but before I get there prior to June 2, 2019, was this defendant banned from your residence?
>
> MR. CARLSON [(DEFENSE COUNSEL)]: Objection. May I approach, Your Honor?
>
> THE COURT: Yes.
>
> * * *
>
> MR. CARLSON: When we argued what the State would be allowed to get into and what they were not, I believe that the no-trespass notice of May 3rd was indicated by the Court that they could not introduce evidence of that. *** That would have been No. 4 on the State's.
>
> THE COURT: I think we said No. 3 was not going to be.
>
> MR. CARLSON: I would agree with No. 3. I thought it was also No. 4.
>
> MS. FRIEND [(ASSISTANT STATE'S ATTORNEY)]: And, Your Honor, we had argued that we should be allowed to introduce that because he was prior to charged with criminal trespass.

THE COURT: The order in my notes reflect paragraph 3.

(The following proceedings were had in open court.)

THE COURT: Objection overruled.

\* \* \*

BY MS. FRIEND:

Q. [B.J.], prior to June 2, 2019, was the defendant banned from coming to your residence?

A. \*\*\* I don't technically remember when I actually like banned him. \*\*\*

Q. Well, did you ever ask law enforcement to ban the defendant from coming to your residence?

A. Yes, I did."

¶ 8    B.J. testified that the police came to her apartment early on the morning of June 2, 2019. She spoke to Officer Jonathan Bell and provided him the following signed statement dated June 2, 2019:

"He kicked my door in came in the house took 380 doll[a]rs from me then he started chok[]ing me till I th[ro]w up then I ran in the hallway naked[.]  He dragged me by my arm back in the house my arm pop[p]ed out of place[.]  He still was dragging me in my house I'm 9 weeks preg[na]nt \*\*\* then once he was done he went in the hallway and started yelling at my [neighbor.]  Once that was done he came back in and put a cov[e]r over my head[.]  I bro[k]e from it and he choked me again by picking me up off my feet[.]  I told him if I go I'm not d[y]ing with[]out a fight."

¶ 9    After making the written statement, B.J. called the police and left a series of voice messages recanting her allegations. The first messages B.J. left were from her sister's phone, and the others

were from her own phone. In her testimony, she denied using her sister's phone because defendant had taken her phone—he had not taken her phone. Later, she used her own phone for messages because she found the money she believed defendant had stolen and used it to reactivate her phone service.

¶ 10    B.J. testified that Bell interviewed her again after she left the messages recanting the written statement. He asked her whether she wanted to write a new statement, and she declined. However, when shown a second written statement dated June 2, 2019, she identified it as hers. The statement read in part:

> "The voicemail I left earlier was not true[.] He told me that if I do that he'll give me my money back but when I got to wear [*sic*] he was at he started yelling at me and didn[']t give it to me[.] So I called the police back."

¶ 11    B.J. also conceded in her testimony that she told a police officer that she left some of the voice messages because defendant was there telling her to make the calls.

¶ 12    B.J. acknowledged that, on November 12, 2019, a few days before trial, she came to the courthouse to speak to a defense investigator. She agreed to make a new written statement, which she testified contained "the truth about what really happened." That statement, admitted as a State exhibit, read as follows:

> "The day that I called the police on [defendant] he was not at my house, he haven't been there since I banned him from my house[.] [H]e never hit me or stole my money[.] I found the money inside my bed[.] He made me mad so I called the police and told them that he made me say that so he could still get charged on it. I would of never called the police if he wouldn't of been cheating and trying to be sneaky[.] All I wanted was for him to come home and at the time I didn't know I was re[a]lly pregn[a]nt. [T]hen I cut off all

my hair and broke all the dishes and everything else that was glass in the house so when the poli[c]e come it look like it was something happening[.] I don't want him to go to jail for something he really did not do for real. I did all of this because I wanted him to feel how I felt because I broke my heart for him and he just go cheat on me I can ok he had anot[h]er thing coming for him[.] I never knew the police would really b[el]ieve me. He never cho[k]ed me or put a cover over my head[.] He never was at the apartment that day he haven't been there since I bann[e]d[] him from there. I went crazy that day like I really had a break down because he haven't been home and he was walking down the street with them hoes[.] He was wit[h] the bitch he was wi[th.] I don't like her at all and I thought he was leaving me for her[.] [T]hat's why I did all this. I'm sorry for doing all of this I just don't want to see him go to jail for hitting me and kicking in my door when he never did and I also was always mad because I used to think when he was with his brother he was cheating on me so that's why I would call the police to[o]."

¶ 13    The State also called Bell. He confirmed the written statements B.J. made to him on June 2, 2019. In addition, he noted that he did not observe any injury to B.J. when they spoke on June 2, 2019. The State rested after Bell's testimony. The defense presented no evidence.

¶ 14    During deliberations, the jury sent the court a note with several questions. As relevant here, the jury asked, "How and why was [defendant] banned from the apartment? Banned by who?" The court responded, "You are to consider only the evidence before you. Please continue with your deliberations[.]"

¶ 15    The jury found defendant not guilty of aggravated domestic battery (strangulation) but guilty of domestic battery (bodily harm) and domestic battery (insulting or provoking contact).

¶ 16    The trial court held a combined sentencing hearing in case No. 19-CF-288 and several other cases.  In case No. 19-CF-288, the court merged the insulting-or-provoking-contact conviction into the bodily-harm conviction and sentenced defendant to the Class 4 maximum of three years' imprisonment.  Defense counsel filed a timely motion to reconsider the sentence but an *untimely* motion for a new trial.  The court denied both motions on their merits, and defendant filed a timely notice of appeal.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, defendant initially concedes that, because there was no proper posttrial motion, defense counsel did not preserve for appeal any claims of trial error.  See, *e.g.*, *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve a claim of trial error for appellate review, a defendant must raise an objection both at trial and in a written post-trial motion).  Nonetheless, defendant asks that we apply the plain-error doctrine to reach his claim of error, which he states as follows:

"Because evidence that [defendant] was previously 'banned' from B.J.'s apartment was not relevant to any proper purpose or fact at issue, and served only to invite negative speculation about what he might have done to garner such a ban, the improper other crimes evidence [that is, B.J.'s testimony about defendant's ban from the apartment] should have been excluded."

¶ 19    He further argues that the court erred in its reasoning for admitting the testimony:

"The only basis the judge offered for overruling defense counsel's mid-trial objection was to rely on its pretrial ruling.  However, the pretrial ruling was that the no-trespass evidence in paragraph 4 of the State's motion was not admissible under 725 ILCS 115/7.4, because it was not an act of domestic violence, but might be introduced to satisfy the State's burden on the trespass charge.  Since the trespass charge was dismissed prior to trial, neither aspect

of the court's pretrial ruling explains its subsequent decision to overrule defense counsel's objection to [B.J.'s] testimony.

Of note, the State at trial did not propose a rationale for admitting this evidence after defense counsel objected. Nor does the trial record suggest any valid basis for allowing the State to introduce evidence that [defendant] had been banned from [B.J.'s] apartment."

¶ 20　Finally, he contends that no proper theories of admissibility were presented in the trial court:

"Because there is a long-standing prohibition on the indiscriminate use of other crimes evidence, and the prior rulings cited by the trial court did not include a viable theory of admissibility, the trial court's decision to allow [B.J.] to testify that [defendant] was banned from her apartment was arbitrary and an abuse of discretion."

¶ 21　As an alternative to plain-error review, defendant argues that defense counsel was ineffective, as "it was objectively unreasonable for counsel not to preserve his objection to evidence that served no proper purpose and invited negative speculation about what [defendant] might have done to get 'banned' from [B.J.'s] home." Defendant further argues that counsel's unreasonable failure to preserve the issue for review prejudiced defendant.

¶ 22　In response, the State contends that B.J.'s testimony that she banned defendant from her home was not other-crimes evidence and therefore did not fall under the restrictions governing such evidence. It further argues that, regardless of the categorization of the evidence, B.J.'s testimony was admissible to show why defendant's conduct in B.J.'s home was insulting or provoking. Finally, the State contends that, because the testimony was admissible, defendant

suffered no prejudice when defense counsel failed to preserve the issue; thus, defendant's ineffective-assistance claim is meritless.

¶ 23    Defendant replies that the testimony about the ban was "suggestive of misbehavior" and, thus, under Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011), was "subject to the same limitations as [evidence of] other crimes." He argues that the testimony about the ban had only one plausible purpose: to serve as evidence of his "propensity to make trouble."

¶ 24    We reject both of defendant's claims. First, the court properly admitted B.J.'s testimony about the ban. Second, because defendant has failed to show error in admitting the evidence, he cannot show that counsel's failure to preserve the issue caused him prejudice under the second prong of the *Strickland* standard for ineffective assistance of counsel claims (*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). We address each claim in turn.

¶ 25    The "ultimate question" of whether a forfeited claim is subject to plain-error review is a question of law, and so we therefore consider it *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010). "A defendant seeking plain-error review has the burden of persuasion to show the underlying forfeiture should be excused." *Johnson*, 238 Ill. 2d at 485. Moreover, as the appellant, defendant has the burden on appeal to affirmatively show error. *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 48.

> "The plain error doctrine is applicable when: (1) *a clear or obvious error occurred* and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a *clear or obvious error occurred* and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the

evidence." (Emphases added and internal quotation marks omitted.) *People v. Clark*, 2016 IL 118845, ¶ 42.

Defendant asserts that the "closely balanced" prong of plain error applies here. In applying the doctrine, we must first determine whether there was "clear or obvious error." *People v. Cavitt*, 2021 IL App (2d) 170149-B, ¶ 134.

¶ 26    A reviewing court typically applies an abuse-of-discretion standard when it considers the propriety of a ruling on the admissibility of evidence. *People v. Ward*, 2011 IL 108690, ¶ 21 (admissibility of other-crimes evidence was reviewed for an abuse of discretion). An abuse of discretion occurs when "the trial court's evaluation is arbitrary, fanciful or unreasonable or where no reasonable [person] would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). Here, we note, defendant did not ask for a ruling on a standard evidentiary matter but, rather, asked the court to enforce its pretrial ruling. "A court is in the best position to interpret its own orders and as such a court's interpretation of its own order should not be reversed unless the record clearly shows an abuse of discretion." *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 965 (1992).

¶ 27    Defendant initially argues that B.J.'s testimony about banning him from her apartment was inadmissible other-crimes evidence. He has not shown that. First, it is not clear that her testimony was other-crimes evidence of any sort. Second, even if it was, defendant has failed to show that it was *inadmissible* other-crimes evidence.

¶ 28    "Evidence of other crimes, wrongs, or acts" *may* be admissible for such purposes as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, barring exceptions such as section 115-7.4 of the Code, other-crimes evidence is *not* admissible to show the defendant's propensity

to commit the charged offense. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Further, "[e]ven if relevant to a purpose other than showing the mere propensity to commit crime, evidence of other crimes may be excluded if its probative value is outweighed by its prejudicial effect." *People v. Adkins*, 239 Ill. 2d 1, 23 (2010). Of course, *any* evidence, even if relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 29     Other-crimes evidence includes "bad acts" as well as prior convictions. *People v. Gregory*, 2016 IL App (2d) 140294, ¶ 23. In *People v. Lewis*, 165 Ill. 2d 305, 345-46 (1995), our supreme court suggested that other-crimes evidence need not be direct evidence of the acts themselves. Instead, it can include evidence from which a trier of fact could infer that the defendant committed such acts. However, defendant has not explained how a no-trespass order falls under this criterion. In particular, he has not explained what bad acts the jury might have inferred from his ban. Further, he has not addressed why a ban announced by a private individual implies any bad act at all. Thus, we are unpersuaded that we should classify evidence of defendant's ban as other-crimes evidence.

¶ 30     Defendant argues that we should nevertheless read *Lewis* as barring evidence suggestive of misconduct. To the contrary, we believe that defendant has misread *Lewis* and that its holding supports affirmance here.

¶ 31     In *Lewis*, the defendant argued that "testimony disclosing that he was in custody in California, as well as testimony concerning extradition procedures, was prejudicial." *Lewis*, 165 Ill. 2d at 345. The *Lewis* court agreed with the defendant that indirect evidence of unrelated criminal conduct is *potentially* unfairly prejudicial:

"This court has held that evidence which suggests or implies that the defendant has engaged in prior criminal activity should not be admitted unless somehow relevant. The fact that

such evidence comes to the jury by way of inference does not alter its potentially prejudicial character. [Citation.] Though incidental and nonspecific in nature, the jury could have inferred from the evidence presented here that defendant had been engaged in prior criminal activity." *Lewis*, 165 Ill. 2d at 345-46.

Nevertheless, relying on *People v. Hayes*, 139 Ill. 2d 89 (1990), *Lewis* held that the evidence of custody and extradition did not *prejudice* the defendant:

"In *Hayes*, the defendant contended that he was prejudiced by the admission of evidence which suggested that he had engaged in prior criminal conduct. Specifically, a witness testified that he identified a photograph of the defendant in the photo books at the violent crimes police station. The defendant claimed that such testimony improperly informed the jury that he had a violent criminal background.

This court agreed that the evidence may have raised an inference in the jurors' minds that the defendant had a criminal history. Nevertheless, the court concluded that the evidence was not so prejudicial where there was no direct evidence of such conduct and, further, there was no suggestion that the persons whose photos were in the books had previous contact with police. [Citations.]

*** The disclosure [here] was limited to the fact that defendant was in custody in a facility in California and was subsequently extradited here. Conceivably, the evidence could have been tailored to provide only that the FBI check revealed defendant's presence in California and that he was subsequently extradited here. Nevertheless, the evidence as presented had no tendency to 'overpersuade the jury' on the issue of defendant's guilt. [Citation.] Defendant was not unduly prejudiced by this evidence." *Lewis*, 165 Ill. 2d at 347.

The other-crimes evidence here was as indirect as the evidence in *Hayes* and far more indirect than the evidence in *Lewis*. Specifically, evidence of a request to the police for a no-trespass order is (1) no more indicative of prior misconduct than evidence that a defendant's photograph appeared in (what as presumably) a mug shot book and (2) far *less* indicative of prior misconduct than evidence of extradition proceedings. If we rely on *Lewis* as defendant suggests, we must conclude that the evidence of the ban was not unduly prejudicial.

¶ 32     Defendant also suggests that B.J.'s testimony about defendant's ban was not relevant. We disagree. Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. R. 401(eff. Jan. 1, 2011). Defendant, as noted, argues that the evidence of the ban "was not relevant to any proper purpose or fact at issue." However, despite acknowledging in his reply brief that evidence of an antagonistic relationship can be relevant to motive and intent, defendant does not address any plausible bases for relevance, such as that B.J.'s banning him tended to show his motive for the battery. Rather than addressing whether any of the State's theories of relevance are correct, he merely distinguishes the cases cited by the State—this is not helpful to him. As we noted, as the appellant, he has the burden to establish error and must show that the challenged evidence was inadmissible. In any event, the evidence here of antagonism in B.J.'s and defendant's relationship helped to explain why defendant might have made a forced entry into the home of a woman who acknowledged at trial that she wanted to remain in a relationship with him.

¶ 33     Defendant asserts, however, that the court erred in that its ruling on the challenged evidence was inconsistent with its pretrial ruling on the State's section 115-7.3 motion. Defendant is mistaken. Indeed, the court appears to have misremembered the details of its pretrial ruling on the

motion. It recalled that it had ruled that the evidence described in paragraph four of the State's motion—that "defendant was served with a no-trespass notice to the victim's residence"—was admissible under section 115-7.4. However, defendant himself exaggerates the court's pretrial ruling and, more importantly, fails to explain how that ruling was error.

¶ 34    Defendant contends that the court ruled that "the no-trespass evidence in paragraph 4," though inadmissible under section 115-7.4, "might be introduced to satisfy the State's burden on the trespass charge." Defendant thereby insinuates that the trial court suggested that the evidence would be admissible only as to the trespass charge (which was dismissed before trial). Defendant overstates the limitations imposed by the court's ruling. The court commented that the evidence might be admissible on bases other than section 115-7.4. The only comment about *specific* alternative uses came from the State, which said it would use the evidence to prove the trespass charge—though the State did not commit itself to use it for *only* that purpose. Thus, although the court's reasoning behind its mid-trial ruling admitting evidence of the ban was erroneous, the ruling itself was not inconsistent with the pretrial ruling, which recognized the potential admissibility of the evidence on grounds other than section 115-7.4. Defendant does not address the possibility that the trial court's mistaken recollection of its prior order nonetheless produced a correct result. He has thus failed to show that the court's mistake was error.

¶ 35    Defendant implies that the trial court erred when, in overruling defendant's objection to B.J.'s testimony about defendant's ban, the court simply referenced its pretrial ruling on the State's section 115-7.4 motion and did not rule anew on admissibility. However, defendant cannot complain that he received a ruling that addressed only the grounds of his objection. "An objection to evidence on specified grounds waives on appeal any alternative objections not specified." *People v. Terrell*, 185 Ill. 2d 467, 507 (1998). If defendant wanted to object on the grounds of

relevance or excessive prejudice, he had to articulate an objection on those grounds. *Terrell*, 185 Ill. 2d at 507 (an objection specifically based on the relevance of an expert's testimony waived a challenge that his testimony was beyond the scope of his expertise).

¶ 36    For all these reasons, we conclude that defendant has failed to establish that the court erred in admitting B.J.'s testimony concerning defendant's ban. Further, because defendant has not shown error, he has not shown plain error. See *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 37    Defendant also argues that defense counsel was ineffective for missing the deadline to file a posttrial motion and thus failing to preserve his claim of evidentiary error. However, as defendant has failed to show that trial error occurred, he cannot show that the missed deadline caused him prejudice. The United States Supreme Court's decision in *Strickland,* 466 U.S. at 687-88, supplies the standard that Illinois courts use to determine whether a defendant received ineffective assistance of counsel. *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). "To prevail on a claim of ineffective assistance under *Strickland*, a defendant must show both that counsel's performance 'fell below an objective standard of reasonableness' and that the deficient performance prejudiced the defense." *Hodges*, 234 Ill. 2d at 17 (quoting *Strickland*, 466 U.S. at 687-88). Defense counsel's failure to file a timely posttrial motion was potentially unreasonable. However, as defendant has not demonstrated any error to be preserved by filing such a motion, he has failed to show that counsel's failure prejudiced him.

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of De Kalb County.

¶ 40    Affirmed.